EL PUEBLO DE PUERTO RICO, peticionario, *v.* NOEL OCASIO HERNÁNDEZ, recurrido.

*Número:* CE-93-41          *Resuelto:* 21 de septiembre de 1995

*Reina Colón de Rodríguez, Carlos Lugo Fiol, Procuradores Generales Interinos, Rosemary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo; *José A. Lugo Pitre,* abogado de la parte recurrida.

## SENTENCIA

Comparece ante nos el Ministerio Público mediante una petición de *certiorari* y solicita que revoquemos la resolución dictada por el extinto Tribunal de Apelaciones, Sección Norte, el 5 de febrero de 1993. Mediante dicha resolución, el foro a quo denegó una petición de *certiorari*, confirmando así la resolución que emitiera el Tribunal Superior, Sala de Arecibo (Hon. Luis E. Jiménez Reverón, Juez) que declaraba con lugar una moción de desestimación presentada al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Toda vez que de un objetivo análisis de los autos del caso se desprende que la prueba desfilada por el

Ministerio Público en la vista preliminar no sostiene la determinación de causa probable por el delito de asesinato en segundo grado, confirmamos la resolución recurrida.

Los hechos del caso se detallan a continuación.

I

El 16 de agosto de 1992 se presentó una denuncia por el delito de asesinato en segundo grado contra el aquí recurrido, el policía Noel Ocasio Hernández. En ésta se le imputó el haber dado muerte al ser humano Carlos Roberto Morales Carrero cuando, alegadamente, al realizar un acto inminentemente peligroso, y sin causa legítima alguna, disparó un arma de fuego en un vecindario habitado.

Celebrada la vista preliminar correspondiente, el Tribunal de Distrito determinó que existía causa probable por el delito de homicidio involuntario. Inconforme con dicha determinación, el Ministerio Público solicitó la celebración de una vista preliminar en alzada. Celebrada ésta, el Tribunal Superior determinó causa probable por el delito de asesinato en segundo grado. Como consecuencia, el Ministerio Público formuló la correspondiente acusación.

Posteriormente, el acusado presentó una moción al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, en la que solicitó la desestimación de la acusación presentada en su contra. Alegó que la determinación de causa probable fue contraria a la ley y al derecho, toda vez que la prueba recibida por el Tribunal Superior durante la vista preliminar en alzada revelaba la ausencia de malicia premeditada, elemento constitutivo del delito de asesinato en segundo grado. Oportunamente, el Ministerio Público presentó su objeción a la referida moción de desestimación.

Señalada y celebrada una vista para discutir la moción de desestimación, el 30 de diciembre de 1992 el Tribunal Superior declaró con lugar la moción y procedió a desesti-

mar la acusación por asesinato en segundo grado.(¹) Concluyó dicho foro que la prueba presentada por el Ministerio Público no establecía los elementos constitutivos del delito de asesinato en segundo grado.

Inconforme, el Ministerio Público acudió ante el extinto Tribunal de Apelaciones vía *certiorari*. Dicho foro concurrió con la determinación de la sala de instancia a los efectos de que el caso presentaba una ausencia total de prueba en cuanto a la malicia premeditada. En consecuencia, procedió a denegar el auto solicitado.

Oportunamente, el Ministerio Público acude ante nos mediante una petición de *certiorari*, imputándole al foro a quo haber errado "al resolver que la vista preliminar en alzada presenta una situación de ausencia total de prueba sobre el delito de asesinato en segundo grado". Petición de *certiorari*, pág. 2. Además, presentó una moción en auxilio de jurisdicción para solicitar la paralización de los procedimientos en instancia, a lo cual accedimos hasta resolver el recurso presentado.

Expedimos el recurso y, luego de examinar los autos originales del caso, así como los alegatos presentados por ambas partes, resolvemos.

## II

La vista preliminar predicada en la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, está encaminada a

---

(¹) Señaló dicho foro que las Reglas de Procedimiento Criminal no proveen para que un magistrado que entienda en una moción para desestimar bajo la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, determine que, aunque la prueba en la vista preliminar no establece el delito imputado, si es suficiente para acusar por un delito distinto del que se acusa, pueda ordenar que el proceso siga por ese otro delito.

No obstante, amparándose en el mandato de la Regla 1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, a los efectos de que dichas reglas deben ser interpretadas de modo que se asegure la tramitación justa y rápida de todo procedimiento, ordenó que el Ministerio Público presentara una nueva acusación por el delito de homicidio involuntario. Ello, en vista de que, a su entender, la prueba presentada en la vista preliminar en alzada fue suficiente para acusar por dicho delito.

proteger a la persona imputada de delito a través de un "filtro o cedazo judicial", mediante el cual el Estado tiene que demostrar si se justifica o no el someter a dicha persona a los rigores de un juicio criminal en su fondo, con las gravosas consecuencias que ello conlleva tanto para ésta como para el Estado. *Pueblo v. Rivera Rodríguez*, 138 D.P.R. 138 (1995); *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988); *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985). Para ello, el ordenamiento procesal le impone al Ministerio Público el deber de demostrar durante la vista preliminar que existe causa probable para creer que se ha cometido el delito imputado, que la persona denunciada probablemente lo cometió y que el Estado cuenta con prueba en relación con todos los elementos del delito imputado en la denuncia. *Pueblo v. Rivera Rodríguez*, supra; *Pueblo v. Rodríguez Ríos*, 136 D.P.R. 685 (1994); *Pueblo v. Rivera Alicea*, 125 D.P.R. 37 (1989); *Vázquez Rosado v. Tribunal Superior*, 100 D.P.R. 592 (1972).

Una vez el Ministerio Público descarga cabalmente tal encomienda ante el juez instructor y éste determina la existencia de causa probable, tal determinación judicial gozará de una presunción legal de corrección. *Pueblo v. Rivera Alicea*, supra; *Pueblo v. Rodríguez Aponte*, supra.

No obstante, la Regla 64(p) de Procedimiento Criminal, *supra*, provee el mecanismo procesal mediante el cual el imputado de delito puede cuestionar la referida determinación de causa probable cuando entienda que esta es contraria "a la ley y a derecho". El imputado podrá, entonces, producir prueba en contrario a la referida presunción de corrección y, en consecuencia, solicitar la desestimación de la acusación presentada en su contra. *Pueblo v. Rodríguez Ríos*, supra; *Pueblo v. Rivera Alicea*, supra.

Ahora bien, reiteradamente hemos sostenido que únicamente procederá declarar con lugar la desestimación de una acusación al amparo de la referida Regla 64(p) cuando exista ausencia total de prueba que tienda a demostrar que

se ha cometido el delito imputado o que el acusado lo cometió. Ello incluye la situación en que se presente una ausencia total de prueba sobre alguno, varios o todos los elementos del delito imputado. *Pueblo v. Rodríguez Ríos*, supra; *Pueblo v. González Pagán*, supra; *Pueblo v. Tribunal Superior*, 104 D.P.R. 454 (1975); *Vázquez Rosado v. Tribunal Superior*, supra.

A esos efectos, en *Pueblo v. Rivera Alicea*, supra, pág. 43, indicamos lo siguiente:

A la luz de los elementos del delito imputado el juzgador debe determinar si tal prueba establece *la probabilidad* de que estén presentes *todos* los elementos, a saber, la probabilidad de que se haya cometido tal delito imputado. Concomitante a dicho examen, debe determinar si hay prueba que *probablemente* conecte al imputado con el delito probablemente cometido. (Énfasis en el original suprimido y énfasis suplido.)

## III

Tomando en consideración las normas de derecho antes expuestas, pasemos a exponer el cuadro fáctico que presenta el caso de autos y la prueba que tuvo ante sí el foro de instancia al desestimar la acusación formulada por el delito de asesinato en segundo grado.[2]

Según la prueba presentada, varios testigos declararon que el 31 de diciembre de 1991 se encontraban celebrando la despedida del año cuando, a eso de las 11:55 P.M., el acusado disparó un tiro al aire. Acto seguido, un vecino de éste resultó herido de bala y luego murió.

La Sra. Betzaida García, esposa del occiso, declaró que el 31 de diciembre de 1991, en ocasión de la despedida del año, estaba en su casa junto a sus padres, su esposo y su hija, y que en el área adyacente, incluso la casa del acu-

---

[2] Por estipulación de las partes, la prueba que tuvo ante sí el Tribunal Superior al desestimar la acusación consistió en la grabación de los procedimientos habidos en la vista preliminar en alzada. Dicha prueba quedó resumida por el referido foro en la resolución que emitiera el 30 de diciembre de 1992 para decretar la desestimación de la acusación.

sado, el ambiente era de fiesta. Declaró, además, que estando frente a su casa con su esposo escuchó una detonación y escuchó a su esposo decir "me hirieron", y que señalando hacia adelante decía "me mataste". Sostuvo que su esposo señaló hacia la residencia del acusado, pero que ella no pudo ver exactamente a quién éste señalaba, pues ella se encontraba de espaldas.

La Sra. Elizabeth Fernández, comadre del acusado, declaró que el 31 de diciembre de 1991 se encontraba celebrando la despedida del año junto a sus hijos en la casa del acusado, cuando a las 11:55 P.M., mientras todos brindaban, el acusado disparó un tiro al aire. Sostuvo que sabía que el disparo había sido al aire porque el acusado tenía ambas manos en el arma apuntando hacia arriba cuando escuchó la detonación. Posteriormente no escuchó ninguna detonación adicional, pero vio que en la casa del occiso una persona había caído al piso.

De otra parte, la testigo Anabelle Mena Pamías, quien había sostenido relaciones amorosas con el acusado, producto de las cuales nació una hija, declaró que el día de los hechos, como a las 8:30 P.M., había visto al imputado en casa de una amiga de ambos y que había notado que él había bebido. Sostuvo que cuando éste se montó en su carro extrajo el arma de reglamento que tenía en su tobillo y le indicó que para liberar el *stress* iba a disparar unos tiros.

Al momento de los hechos, se le ocupó al acusado un (1) revólver, seis (6) balas y un (1) casquillo disparado. El custodio de la guardería declaró que el resultado de balística demostraba que del arma del acusado había sido disparado el casquillo ocupado, pero que por su mutilación no se había podido determinar que la bala que ocasionó la muerte hubiese provenido del arma del acusado.

Además, realizó una inspección ocular del lugar para establecer la trayectoria de la bala y sostuvo que el proyectil iba subiendo, rebotó en un alero de la casa del acusado, y volvió a rebotar hasta llegar al lugar donde se encon-

traba el occiso. Señaló que, aunque no sabía quién había disparado el arma, sí sabía que desde donde le informaron que se encontraba parado el acusado había salido un disparo que llegó hasta donde se encontraba el occiso.

Veamos si la evidencia testifical antes expuesta demuestra que el foro de instancia se encontraba ante una situación de ausencia total de prueba en cuanto al delito de asesinato en segundo grado, lo cual pudiera justificar la desestimación decretada.

## IV

*Asesinato*, según definido en el Art. 82 del Código Penal, 33 L.P.R.A. sec. 4001, consiste en dar muerte a un ser humano con malicia premeditada. El Art. 83 (33 L.P.R.A. sec. 4002), por su parte, establece la gradación del asesinato en asesinato en primer grado y asesinato en segundo grado.[3]

Sabido es que el asesinato en segundo grado consiste en ocasionar la muerte a un ser humano con malicia premeditada pero sin que medie deliberación. *Pueblo v. Gómez Nazario*, 121 D.P.R. 66 (1988); *Pueblo v. Torres Montañez*, 106 D.P.R. 125 (1977); *Pueblo v. Barriera González*, 89 D.P.R. 772 (1964). Tal malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte e implica, además, la existencia de una intención de ocasionarla. *Pueblo v. Rivera Alicea*, supra; *Pueblo v. Méndez*, 74 D.P.R. 913 (1953).

---

[3] A esos efectos, dicho artículo dispone lo siguiente:

"Constituye asesinato en primer grado:

"(a) Todo asesinato perpetrado por medio de veneno, acecho o tortura, toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio agravado, violación, sodomía, robo, escalamiento, secuestro, estragos, mutilación o fuga.

"(b) Dar muerte a una persona que sea miembro de la Policía o de la Guardia Municipal o que sea Oficial de Custodia, cuando dicha persona se encuentre en el cumplimiento de su deber, y su muerte haya ocurrido como resultado de la comisión de un delito grave o de la tentativa de comisión de un delito grave o del encubrimiento de un delito grave.

"Todos los demás asesinatos serán considerados de segundo grado." 33 L.P.R.A. sec. 4002.

Por su parte, el Art. 15 del Código Penal, 33 L.P.R.A. sec. 3062, describe la intencionalidad del delito de la siguiente manera:

a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o

b) Cuando el resultado sin ser querido ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión.

El concepto de "intención de ocasionar la muerte", dentro del contexto del delito de asesinato en segundo grado, se puede manifestar al realizar un acto o producir un grave daño corporal que probablemente podría resultar en la muerte de otro ser humano. *Pueblo v. Rivera Alicea*, supra. Este criterio se refiere a la peligrosidad que implica la actuación del acusado, en el sentido del riesgo sustancial de muerte creado, *Pueblo v. Méndez*, supra, y se determinará de acuerdo con las circunstancias relacionadas con el delito, la capacidad mental, las manifestaciones y la conducta de la persona imputada. Art. 14 del Código Penal, 33 L.P.R.A. sec. 3061.

Un análisis de la normativa antes transcrita nos impide concluir que en el caso de autos, la prueba presentada por el Ministerio Público durante la vista preliminar establece los elementos esenciales del delito de asesinato en segundo grado. Estamos ante un caso en que, según sus circunstancias particulares, no se configura la intención de ocasionar la muerte a otro ser humano. Ello es así debido a que se encuentra ausente el elemento de previsibilidad.

La acción de disparar un arma de fuego hacia arriba no crea de por sí un riesgo sustancial de muerte. No era previsible que, al disparar el arma, el proyectil iría a rebotar en un alero, llegando posteriormente hasta la residencia del occiso. Tal hecho, así como la muerte ocurrida luego, no son resultados que pudieran haber sido previstos como consecuencias naturales o probables de la acción llevada a cabo por el acusado.

De otra parte, el acto de disparar voluntariamente un arma de fuego en un lugar público o en cualquier sitio donde se encuentre alguna persona que pueda recibir un daño, sin ser un caso de defensa propia o actuación en el desempeño de sus funciones oficiales, constituye un delito menos grave que se encuentra tipificado por el Art. 32 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 442. Además, el Código Penal, en su Art. 86, establece que incurrirá en el delito de homicidio involuntario "[t]oda persona que obrando con negligencia o que al realizar un acto ilegal que no constituyere delito grave", ocasione la muerte a otro ser humano. 33 L.P.R.A. sec. 4005.

En el caso de epígrafe, la prueba de cargo presentada durante la vista preliminar establece la probabilidad de que el acusado voluntariamente haya disparado un arma de fuego sin estar ante una situación de defensa propia ni en el ejercicio de sus funciones oficiales; ello, en violación del Art. 32 de la Ley de Armas de Puerto Rico, *supra.* Establece, además, que dicho acto *probablemente* fue el que causó la infortunada muerte del ser humano Carlos Roberto Morales Carrero. Sin embargo, tales circunstancias no denotan el elemento de malicia premeditada.

En consecuencia, de demostrar el Ministerio Público durante el juicio en su fondo que la bala disparada por el acusado fue la que causó la referida muerte, el delito cometido sería el de homicidio involuntario y no el de asesinato en segundo grado. *Pueblo v. Martínez Vega*, 98 D.P.R. 946 (1970).

## V

En síntesis, y a la luz de todo cuanto antecede, concluimos que el error alegado no fue cometido. La prueba recibida por el tribunal de instancia durante la vista preliminar en alzada no sostiene la determinación de causa probable por el delito de asesinato en segundo grado. Por el

contrario, refleja una ausencia total de prueba en cuanto al elemento de malicia premeditada, lo cual justifica la desestimación decretada.

La adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado corresponderá en su día al juzgador de los hechos.

Por todos los fundamentos antes expuestos, *se dicta sentencia en la cual se confirma la resolución recurrida y se ordena la continuación del caso de autos por el delito de homicidio involuntario en conformidad con lo aquí expresado.*

Así lo pronunció y manda el Tribunal, y certifica el señor Secretario General. El Juez Presidente Señor Andréu García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García disintió con opinión escrita, a la cual se unió el Juez Asociado Señor Fuster Berlingeri. El Juez Asociado Señor Rebollo López disintió sin opinión escrita.

— O —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Fuster Berlingeri.

I

Noel Ocasio Hernández fue denunciado de *asesinato en segundo grado*. Aunque en la vista preliminar inicial se determinó causa probable por *homicidio involuntario*, en alzada, un magistrado del Tribunal Superior lo encausó por *asesinato en segundo grado*.

Ocasio Hernández pidió su desestimación (Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II). La cuestión quedó sometida con la grabación de los procedimientos de

la vista preliminar en alzada. El Tribunal Superior, Sala de Arecibo (Hon. Luis E. Jiménez Reverón, Juez), desestimó y ordenó una nueva acusación por *homicidio involuntario.* El entonces Tribunal de Apelaciones (Sección Norte) denegó un *certiorari* del Ministerio Fiscal mediante resolución fundada, esencialmente, en la "ausencia total de prueba en cuanto a la malicia premeditada, elemento esencial para el delito de asesinato en segundo grado" (Apéndice I, pág. 12), y que la actuación de Ocasio Hernández fue "una negligente mas no intencional."

## II

Según los hechos relatados en la propia *sentencia,* difícilmente estamos ante una ausencia total de prueba sobre asesinato en segundo grado que justifique desestimar en esta etapa. Veamos.

La *malicia premeditada* implica ausencia de justa causa o excusa al ocasionar una muerte y, además, la *intención* de ocasionarla. Esta intención puede manifestarse como una *específica* de matar o quitar la vida, o una *general* al *realizar un acto cuya consecuencia natural o probable sea la muerte.*([1])

Si la intención de ocasionar la muerte bajo asesinato en segundo grado es en función a la peligrosidad de causar grave daño corporal y se nutre de las circunstancias, capacidad mental y conducta del imputado —Art. 14 del Código Penal, 33 L.P.R.A. sec. 3061— es inescapable concluir que el policía Ocasio Hernández, adiestrado en el uso de su arma de reglamento, conocía su naturaleza letal y pudo haber previsto el riesgo de causar heridas graves a inocen-

---

([1]) El Art. 15 del Código Penal dispone:

"El delito es intencional:

"(a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o

"(b) Cuando el resultado sin ser querido ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión."

tes o la muerte, en este caso, la de Carlos R. Morales Carrero.

## III

No podemos, pues, suscribir la *sentencia* mayoritaria apuntalada en la tesis de que "[l]a *acción de disparar un arma de fuego hacia arriba no crea de por sí un riesgo sustancial de muerte. No era previsible* que, al disparar el arma, el proyectil iría a rebotar en un alero, llegando posteriormente hasta la residencia del occiso. Tal hecho, así como la muerte ocurrida luego, no son resultados que pudieran haber sido previstos como consecuencias naturales o probables de la acción llevada a cabo por el acusado". (Énfasis suplido.) Sentencia, pág. 91.

Contrario a ese aserto, es razonablemente predecible que el disparar intencionalmente, sin justa causa, un arma de fuego hacia arriba, en una fiesta de despedida del año (en zona urbana o rural poblada), el proyectil en su descenso puede —por rebote o no— producir grave daño corporal, incluso la muerte, como en el caso ante nos. Ello es distinto del conocimiento específico que pudiera tener el autor del disparo de la posible trayectoria de la bala; en esta situación, de causar una muerte, estaríamos hablando de una intención específica, esto es, ante un asesinato en primer grado.

Rechazamos la conclusión automática de homicidio involuntario fundada en que la muerte de Morales Carrero ocurrió al infringirse el Art. 32 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 442, que tipifica como delito *menos grave* el disparar cuando un tercero puede resultar perjudicado. En la vida real, no toda muerte así ocasionada implica ausencia de los elementos de asesinato. Dicho de otro modo, la comisión de un delito menos grave, por sí, no excluye los otros elementos que configuran el asesinato en sus dos (2) modalidades.

Finalmente, salvo el valor intrínseco de algunos de sus pronunciamientos, *Pueblo v. Martínez Vega*, 98 D.P.R. 946 (1970), *es un triste y mal precedente*, que cesó de tener vigencia con el Art. 15 del Código Penal, 33 L.P.R.A. sec. 3062, aprobado posteriormente (1974). Según indicado, ahora se visualiza delito *intencional*, la muerte no querida —prevista o predecible— "consecuencia natural o probable" del acto (disparo).