*649 TEXTO COMPLETO DE LA RESOLUCIÓN
Las causas KLCE-2007-01499, KLCE-2007-01500, KLCE-2007-01501, KLCE-2007-01525, KLCE-2007-01544 y KLCE-2007-01574 quedaron presentadas ante este foro de apelación intermedia entre el 10, 11 y 15 de octubre de 2007. Tales expedientes, aunque radicados en forma separada ante el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), atienden un mismo asunto y en todos se recurre de una misma Resolución emitida el 12 de septiembre de 2007 por el hermano foro de Instancia. Mediante Resolución de 24 de octubre de 2007, consolidamos para su atención y disposición.
Antecedentes
Los peticionarios, Sr. Juan Ramos Hernández (KLCE-2007-01499), Sr. Juan Roldán Vega (KLCE-2007-01500), Sra. Elba García Pastrana (KLCE-2007-01501), Sr. Jorge Luis Urbina Acevedo (KLCE-2007-01525), Sr. Héctor René Lugo Ríos (KLCE-2007-01544) y señores Francisco Martínez Irizarry, Enrique Vázquez Préstamo, Luis Andino Delbrey, Jesús Caraballo Ortiz y Felipe Román Lozada (KLCE-2007-01574), ocuparon cargos directivos dentro del Comité Ejecutivo de la Unión Independiente Auténtica (UIA), organismo laboral que agrupa a los empleados de la Autoridad de Acueductos y Alcantarillados (AAA), desde 1999 hasta el 2003, inclusive.
Contra cada uno de los peticionarios se presentaron denuncias por infracción a la sección 6054 (b) (1) del Código de Rentas Internas de 1994, 13 LPRA see. 8059 (b) (1). En síntesis, el Ministerio Público les imputó haber hecho, suscrito y presentado, so pena de perjurio, las correspondientes planillas de contribución sobre ingresos para los años contributivos 1999, 2000, 2001, 2002 y 2003, declarando en éstas, con conocimiento de causa, información falsa e incorrecta respecto al ingreso generado en los referidos años contributivos, respecto a lo que determinó causa probable para el arresto por dicho delito.
Celebrada la vista preliminar y obtenida por el Ministerio Público determinación de causa para formular acusación, el 7 de septiembre de 2006, el Ministerio Público presentó contra cada uno de los aquí peticionarios cinco acusaciones por infracción al delito antes mencionado.
*650 Inconformes, entre el 31 de enero de 2007 y el 20 de febrero de- igual año, varios de los aquí peticionarios presentaron sendas mociones al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64 (p), al tiempo que otros se unieron a las mociones ya instadas, solicitando todos la desestimación de las acusaciones fundamentado en que no fueron emitidas conforme a la ley.
En términos generales, argumentaron que el Ministerio Público falló en establecer los elementos del delito imputado. Plantearon que durante la vista preliminar hubo ausencia total de prueba sobre la intención específica necesaria para que se configure el delito. Adujeron que el Ministerio Público no ofreció prueba que estableciera el hecho de que los acusados fueron los que “hicieron y suscribieron ” sus planillas. Alegaron, además, que la prueba de cargo no demostró adecuadamente que los aquí peticionarios conocían de la falsedad e incorrección en cuanto a “todo hecho pertinente” de la planilla. Respecto a este último planteamiento señalan que el Estado se limitó a indicar la alegada falsedad de un sólo hecho pertinente, a saber, el ingreso, informado en la planilla original, sin ni siquiera desfilar prueba para auxiliar al foro judicial en la determinación de cuáles son todos los hechos pertinentes de una planilla bajo el crisol del delito imputado.
A su vez, los aquí peticionarios adujeron que se presentó como prueba estipulada la planilla de contribución sobre ingresos para el año 2003 así como el folleto de instrucciones que le acompaña, del cual se desprende una instrucción que permite al contribuyente enmendar su planilla original dentro de los 4 años después de ésta haber sido radicada si, entre otras circunstancias, se hubiere omitido ingresos en la planilla original. Así, los aquí peticionarios sostienen haber presentado sus planillas enmendadas dentro del término provisto para añadir los ingresos que no fueron antes incluidos en las planillas originales, todo ello previo a que mediaran acusaciones criminales por lo que, a su entender, procede la desestimación de las mismas.
El 31 de enero de 2007, el Ministerio Público presentó oposición a las solicitudes de desestimación instadas por la defensa.
Tras varios trámites procesales, no necesario aquí pormenorizar, el 17 de agosto de 2007 se celebró ante el TPI una audiencia para discutir las mociones de desestimación instadas por los acusados. Contando con la grabación de la vista preliminar y con la transcripción oficial de los incidentes allí acaecidos, así como con los argumentos de las partes, el 12 de septiembre de 2007, notificada el 13 de igual mes y año, el hermano foro sentenciador dictó extensa y fundamentada Resolución en la que denegó todas las solicitudes de desestimación. Véase, Ap. 2 del KLCE-2007-01499» págs. 5-40.
No conformes, los peticionarios acuden ante este foro de apelación intermedia e imputan al TPI la comisión del siguiente error en la causa KLCE-2007-01499, el que se repite en forma exacta en los subsiguientes expedientes KLCE-2007-01500, KLCE-2007-01501, KLCE-2007-01525, KLCE-2007-01544 y KLCE-2007-01574, consolidados:

“Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la solicitud de desestimación de todos los cargos pendientes contra el peticionario de epígrafe. ”

Junto a los recursos, los peticionarios presentaron mociones en auxilio de jurisdicción, solicitando que se ordene la paralización de los procedimientos ante el TPI, hasta tanto este Foro resuelva en los méritos. El 24 de octubre de 2007 emitimos una Resolución en la que concedimos al Procurador General 20 días plazo para exponer respecto a la causa consolidada. Luego de breve término adicional, el 15 de noviembre de 2007, el Procurador presentó “Escrito en Oposición a Peticiones de Certiorari”, quedando sometida la causa.
El 26 de noviembre de 2007 compareció nuevamente el Procurador mediante escrito titulado “Moción Informativa Urgente en Cuanto a Moción en Auxilio de Jurisdicción Presentada por los Peticionarios’'’, en el que se solicitó la paralización del juicio en las causas KLE2006G0369-0373 y KLE2006G0374-0378, *651 correspondientes a los aquí peticionarios Sr. Urbina Acevedo y Sr. Román Lozada, respectivamente, entonces pautado para el 3 de diciembre de 2007 en la Sala 1105 del Tribunal Superior de San Juan, por lo que el 28 de noviembre de 2007 emitimos Resolución ordenando la paralización de los mencionados señalamientos, hasta la disposición de esta causa. Con el beneficio de los escritos de ambas partes, procedemos a disponer.
Exposición y Análisis
I
Conforme al vigente ordenamiento procesal penal, un acusado de delito grave tiene disponible el vehículo procesal establecido en la moción de desestimación bajo la Regla 64 (p) de Procedimiento Criminal, supra, para revisar la determinación de causa probable para acusar obtenida por el Ministerio Público en la etapa de Vista Preliminar.
Dicha norma del ordenamiento procesal penal reconoce como fundamento para desestimar el que “se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y al derecho”. Regla 64(p) de Procedimiento Criminal, supra, (énfasis nuestro); Pueblo v. Branch, 154 DPR 575 (2001).
El acusado podría entonces producir prueba en contrario a la referida presunción de corrección que favorece a la determinación de causa probable y, en consecuencia, solicitar la desestimación de la acusación radicada en su contra. Pueblo v. Branch, supra, a la pág. 585; Pueblo v. Ocasio Hernández, 139 DPR 84 (1995); Pueblo v. Rodríguez Ríos, 136 DPR 685 (1994); Pueblo v. Rivera Alicea, 125 DPR 37, 43 (1989). Véase, además, O. E. Resumil de Sanfilippo, Práctica Jurídica de Puerto Rico-Derecho Procesal Penal, New Hampshire, Ed. Butterworth, 1993, Vol. 2, pág. 196.
Ahora bien, sólo procede declarar con lugar una moción de desestimación basada en el inciso (p) de la mencionada Regla 64, cuando se demuestre claramente que realmente se trata de una ausencia total de prueba en cuanto a la probabilidad de que la persona procesada haya cometido el delito imputado — que no hay prueba sobre uno o todos los elementos del delito— o sobre la conexión del acusado con el delito imputado. Pueblo v. Andaluz, 143 DPR 656 (1997); Pueblo v. Ocasio Hernández, supra; Pueblo v. Rodríguez Ríos, supra; Pueblo v. Rivera Alicia, supra; Pueblo v. González Pagán, 120 DPR 684, 687 (1988).
El requisito de ausencia total de prueba responde al propósito medular de la Vista Preliminar, que requiere como mínimo quántum de prueba una scintilla de evidencia que de no ser rechazada por demostrarse ser espuria, pueda establecer la probabilidad de que se cometió el delito y que fue el imputado quien probablemente lo cometió. Exigir otra cosa que no sea la ausencia total de prueba creíble, equivale a realizar un mini juicio, por lo que se debe desalentar el uso de la regla como una tercera determinación de causa probable. Pueblo v. González Pagán, 120 DPR 684, 688 (1988); Pueblo v. Rodríguez Ríos, supra; E. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, sec. 22.7(C), pág. 97.
n
Los peticionarios, en esencia, imputan error al TPI por denegar las mociones de desestimación presentadas al amparo de la Regla 64 (p) de Procedimiento Criminal, supra, cuando sostienen que el Ministerio Fiscal no presentó prueba sobre ninguno de los elementos del delito imputado.
Por el contrario, el Ministerio Público argumenta haber cumplido con el quántum de prueba requerido para la etapa de vista preliminar al desfilar una scintilla de evidencia respecto a todos los elementos del delito imputado y la conexión de los aquí peticionarios con el mismo, por lo que arguyen sería totalmente improcedente acceder a lo solicitado por la defensa y desestimar las acusaciones. Le asiste la razón. Veamos.
*652 Los aquí peticionarios enfrentan acusaciones por diversas infracciones a la sección 6054 (b) (1) del Código de Rentas Internas, supra, que establece lo siguiente:

“b) Autenticación de la planilla; declaración u otro documento; penalidad de perjurio.

(1)Penalidades. Cualquier persona que voluntariamente hiciere y suscribiere cualquier planilla, declaración u otro documento que contuviere, o estuviere autenticado mediante una declaración escrita al efecto de que se rinde bajo las penalidades de perjurio, cuya planilla, declaración o cuyo documento ella no creyere ser ciertos y correctos en cuanto a todo hecho pertinente, será culpable de delito grave y castigada con multa no mayor de cuatro mil (4,000) dólares o reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un máximo de dos (2) años. El tribunal a su discreción podrá imponer ambas penas. ’’

De una mera lectura de la citada sección 6054 (b) (1) se desprenden los siguientes elementos constitutivos del delito que en ésta se establece, a saber:

“(1) Cualquier persona que voluntariamente;

(2) Hiciere y suscribiere una planilla bajo las penalidades de perjurio;

(3) Que la persona no creyere ciertos o correctos en cuanto a todo hecho pertinente contenido en la planilla.”
(A)
En cuanto al primero de los elementos antes particularizados, los aquí peticionarios alegaron que el Ministerio Público no presentó prueba que estableciera la probabilidad de que la omisión de ingresos en las planillas fuera el producto de un acto voluntario o intencional. Arguyen que el hecho de informar una cantidad de ingresos en la planilla original de los años contributivos 1999 al 2003, inclusive, y luego corregir tal suma mediante la presentación de planillas enmendadas, de por sí no es prueba suficiente para establecer el elemento de voluntariedad requerida por el delito imputado.
Una lectuj-a de la Resolución recurrida revela que conforme a la prueba de cargo presentada en la vista preliminar, los aquí peticionarios admitieron los siguientes hechos, a saber:

“(.1) Que los acusados presentaron planillas de contribución sobre ingresos en los años en cuestión dentro del término contemplado en la ley, pero sólo reportando los ingresos devengados como empleados de laAAA.

(2) Que los acusados generaron ingresos tanto por parte de la VIA y salarios como empleados de la AAA durante los años en cuestión.

(3) Que en septiembre de 2004, todos presentaron planillas enmendadas para los años en cuestión reportando ingresos devengados como funcionarios de la UIA. ”

(Énfasis suplido.) (Ap. 2 del KLCE-2007-01499, págs. 23-24.)
Asimismo trasciende de autos que el hermano foro de instancia determinó que luego de un análisis de toda la evidencia de cargo presentada en la vista preliminar quedó demostrado “que los once (11) acusados omitieron cantidades sustanciales de ingresos, todos provenientes de la misma fuente: la UIA.” (Ap. 2 del KLCE-2007-01499, pág. 36.) Al respecto, la fiscalía presentó el testimonio del Ledo. Miguel Elisa, quien ocupó el puesto de Secretario Auxiliar del Área de Evasión Contributiva del Departamento de Hacienda de julio de *653 2003 a noviembre de 2004 y quien declaró, entre otros extremos, que el criterio del Departamento de Hacienda para establecer una omisión sustancial es si existe una diferencia de 25 % o más de los ingresos reportados. {Id. a la pág. 30.) En el caso de epígrafe, el TPI, a modo de ejemplo, incluyó algunas de las cuantías reportadas en las planillas originales y las sumas informadas en las planillas enmendadas, diferencia, que en algunos casos representó desde un 32, 53 y hasta el 77% de los ingresos no reportados. {Id. a las págs. 34-35.)
Por otro lado, el TPI estableció que la prueba vertida en la vista preliminar demostró que “[h]ubo un patrón de evasión por parte de los once (11) acusados, ya que dichos ingresos fueron dejados de reportar por cinco (5) años consecutivos. Los once (11) acusados ocupaban puestos directivos en la UIA, y no fue hasta comenzada la investigación del Departamento de Hacienda y las auditorías, que optaron por presentar las planillas enmendadas, para entonces reportar los ingresos recibidos de la UIA. Los pagos efectuados a los acusados prevenían de diversas cuentas y fondos destinados a suplir necesidades particulares de la Unión.” {Id. a la pág. 36.)
Si bien es cierto que el Ministerio Fiscal no presentó evidencia directa sobre el elemento de voluntariedad necesario para que se tipifique el delito imputado, todos los hechos antes aludidos analizados conjuntamente demuestran la probabilidad de que los aquí peticionarios actuaron intencional o voluntariamente al no incluir en sus planillas originales todos los ingresos generados en los arios contributivos en controversia.
Es de rigor aquí señalar que conforme a los principios evidenciarios que rigen nuestro ordenamiento, todo hecho puede ser probado mediante evidencia directa o a través de evidencia indirecta o circunstancial. Regla 10 (H) de Evidencia, 32 LPRA Ap. IV, R. 10(H). Así pues, nuestro más alto foro judicial ha dictaminado que los elementos de un delito son susceptibles de ser probados mediante el mecanismo de la evidencia circunstancial, entiéndase, “por inferencias razonables que surgen del conjunto de los hechos y circunstancias probadas Pueblo v. Pellot, 121 DPR 791, 806 (1988).
Asimismo, aunque nuestro Tribunal Supremo no ha resuelto previamente una controversia respecto al delito aquí imputado, sí tuvo la oportunidad de atender y disponer de una controversia similar en Pueblo v. Franceschi, 74 DPR 825 (1952), en el que se acusó a un cuidadano de presentar planillas con información fraudulenta conforme dicha conducta se hallaba tipificada en la antigua Ley de Contribución Sobre Ingresos de 1925. Cobran singular importancia las expresiones vertidas por dicho foro en lo atinente a la prueba del factor voluntariedad, al establecer que:
[l]a voluntariedad (willfulness) es, desde luego, una cuestión de hechos. Prueba directa de ella no es esencial. La misma puede inferirse de actos y circunstancias, y la inferencia puede hacerse de una combinación de actos y circunstancias, aunque cada acto separado y cada circunstancia de por sí no sea concluyente. Además, en casos de esta naturaleza, una intención voluntaria afirmativa puede inferirse de ... cualquier conducta, cuyo efecto probable sea inducir a error u ocultación. Pueblo v. Franceschi, supra, a la pág. 836.
A tenor con lo anterior, resulta evidente que el Ministerio Público cumplió con el quántum de evidencia requerido en esta etapa de los procedimientos para establecer el elemento de voluntariedad del delito imputado. Por tanto, no se cometió este aspecto del error levantado.
Por otro lado, debemos pronunciarnos brevemente respecto al alegado “derecho” que tienen los contribuyentes para enmendar las planillas originales dentro de un plazo de 4 años después de éstas haber sido radicadas.
Los peticionarios apoyan su planteamiento en la sección 6005 (a) sobre “Período de Prescripción para la Tasación y el Cobro” del Código de Rentas Internas de 1994, 13 LPRA see. 8025, así como en las instrucciones que se incluyen en el formulario de la planilla. Con este argumento, los peticionarios *654 pretenden lograr la desestimación de las acusaciones, pues, a su entender, no incurrieron en la conducta punible imputada ya que las planillas enmendadas fueron presentadas en septiembre de 2004, esto es, dentro del plazo de 4 años que establece la sección 6005, supra, y el mencionado formulario de instrucciones. Sostienen, por tanto, que al momento en que se presentaron las acusaciones en diciembre de 2004, ya se .había informado al Departamento de Hacienda el ingreso total percibido por los aquí peticionarios durante los años contributivos de 1999 al 2003, inclusive.
Dicho planteamiento carece de méritos y de pertinencia a la causa consolidada de epígrafe. Basta aquí señalar, en primer lugar, que tras un análisis detenido de la sección 6005, supra, el TPI concluyó que la misma “no tiene el alcance de otorgar un ‘derecho ’ a un contribuyente para presentar planillas enmendadas en cuatro (4) años en aquellos casos en que se omiten ingresos en la planilla original.” (Ap. 2 del KLCE-2007-01499, pág. 38.) Coincidimos plenamente con la conclusión a la que arribó el ilustrado foro sentenciador. En segundo lugar, la instrucción citada por la defensa y que surge del formulario que acompaña la Planilla no tiene fuerza de ley ni se sustenta en ninguna disposición legal o reglamentaria, por lo que estamos impedidos en reconocer que dicha instrucción provea a los contribuyentes un término para presentar planillas enmendadas. Coincidir con la interpretación de la defensa a los efectos de que el contribuyente tiene un derecho a enmendar su planilla original dentro del plazo de 4 años de que fue radicada para, entre otros extremos, incluir ingresos antes omitidos, sería como ir en contra del postulado medular que rige la obligación contributiva impuesta por ley que manda a informar todo ingreso que se perciba durante el año contributivo de que se trate.
Por último, precisa señalar que el delito por el cual se acusa a los aquí peticionarios castiga que a sabiendas se brinde información falsa o incorrecta en cuanto a todo hecho pertinente en la planilla de contribución sobre ingresos. Por lo tanto, una vez se incurre en dicha conducta se configura la acción punible tipificada en la sección 6054 (b)(1) del Código de Rentas Internas, supra. Por lo tanto, el hecho de que se hubiera presentado una planilla posterior para enmendar la información falsa o incorrecta incluida en la planilla original no exime a los acusados de su responsabilidad penal.
(B)
Respecto al segundo elemento del delito, los aquí peticionarios arguyen, en esencia, que el Estado no presentó prueba de cargo tendente a demostrar que los peticionarios fueron quienes “hicieron y suscribieron’’’ las planillas en controversia. Como podemos apreciar, el planteamiento de los peticionarios es espurio.
En primer lugar, todas y cada una de las planillas en controversia fueron presentadas como prueba estipulada en la etapa de vista preliminar. No existe controversia en cuanto al hecho de que los aquí peticionarios fueron quienes firmaron sus planillas y quienes las radicaron ante el Departamento de Hacienda. Más aún, de cada planilla surge, previo a las correspondientes firmas de los acusados, el juramento que reproducimos a continuación:

Declaro bajo penalidad de perjurio que esta planilla (incluyendo los estados, anejos, y demás documentos que se acompañan) ha sido examinada por mi y que según mi mejor información y creencia es cierta, correcta y completa. También declaro que he proporcionado más del 50% del sustento a todos los dependientes reclamados. La declaración de la persona que preparó la planilla (excepto el contribuyente) es con respecto a la información disponible y dicha información ha sido verificada.

Conforme a lo anterior, resulta completamente inmeritorio la pretensión de los aquí peticionarios al argumentar que procede la desestimación de las acusaciones porque el Ministerio Público no produjo evidencia alguna que demostrara que éstos fueron los que “hicieron” sus planillas, en el sentido lato de la palabra. Simplemente, sería inaudito interpretar la frase contenida en el estatuto penal que indica “hiciere y suscribiere” a los efectos de que el Estado tenga que probar que el acusado fue quien personalmente completó (hizo) la planilla cuando mediante su firma da fe, so pena de perjurio, de la veracidad del contenido de la planilla. Por *655 tanto, no se cometió el error apuntado.
(Q
En cuanto al tercer elemento constitutivo del delito imputado, la defensa adujo que el Ministerio Público falló en establecer la falsedad de todos los hechos pertinentes contenidos en la planilla, limitándose únicamente a ofrecer prueba sobre un sólo hecho esencial, a saber, evidencia que demuestra la probabilidad de que los aquí peticionarios no creían la corrección del ingreso informado en la planilla original.
Se trata de un planteamiento carente de méritos. El Estado actuó conforme a derecho y según el quántum de prueba requerido en la etapa de vista preliminar al producir evidencia respecto a la cuantía sustancial de ingresos que todos los aquí peticionarios no informaron en sus planillas originales, siendo éste el factor pertinente a establecer en dicha fase del encauzamiento criminal.
Luego de un análisis de las constancias de autos, entendemos que la prueba presentada en la vista preliminar fue suficiente para sostener una determinación de causa probable para acusar a cada uno de los aquí peticionarios por las cinco infracciones a la sección 6054 (b)(1) del Código de Rentas Internas de 1994, supra. Es decir, confrontados los requisitos de la conducta punible con la prueba de cargo, forzoso es concluir que ante el hermano foro de Instancia se practicó prueba suficiente, en esta etapa de los procedimientos, respecto a la probabilidad requerida por ley de que se cometió el delito imputado y que fueron los peticionarios quienes con mayor probabilidad lo cometieron. No estamos aquí ante ausencia total de prueba. Siendo ello así, actuó correctamente el tribunal de instancia al denegar las mociones desestimatorias.
Ante los hechos que esta causa informa, no encontramos razón o motivo dentro de los parámetros de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, por el cual debamos intervenir en este momento con la determinación del TPI, por lo que tampoco debemos intervenir el trámite procesal que debe proseguir la causa de marras. Procede que se continúe el trámite ante el foro de instancia, con la celebración del juicio plenario.
Dictamen
Conforme a lo antes expuesto, declinamos expedir los autos de Certiorari aquí solicitados en las 6 causas consolidadas.
Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 6
1. La referida sección 6005 (a) del Código de Rentas Internas de 1994, supra, dispone como sigue:

“Subcapítulo A. Tasación y Cobro de Deficiencias

See. 8025. Período de prescripción para la tasación y el cobro

a) Regla general. El monto de las contribuciones o impuestos establecidos por cualquier parte de este subtítulo será tasado dentro de cuatro (4) años después de haberse rendido la planilla o declaración, y ningún procedimiento en corte sin tasación para el cobro de dichas contribuciones será comenzado después de la expiración de dicho período. ”

2. Del formulario de la Planilla correspondiente al año contributivo 2003 estipulado en evidencia, surge lo siguiente bajo el *656 acápite titulado “Planilla Enmendada

“Si omitió ingresos o no reclamó una deducción o crédito al que tiene derecho o considera que no tiene derecho a alguna deducción o crédito reclamado en la planilla oficial, deberá enmendar la misma. Ennegrezca completamente el óvalo correspondiente a Planilla Enmendada.

Dicha Planilla se deberá rendir dentro de los 4 años después de la fecha en que fue rendida la planilla original. ”