EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Nelson Eric Guadalupe Rivera<br><br>Recurrido | Certiorari<br><br>2021 TSPR 32<br><br>206 DPR \_\_\_\_ |

Número del Caso: CC-2019-593

Fecha: 12 de marzo de 2021

Tribunal de Apelaciones:

    Región Judicial de Ponce

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Pedro A. Vázquez Montijo
    Procurador General Auxiliar

Abogados de la parte recurrida:

    Lcdo. Orlando J. Aponte Rosario
    Lcdo. Albert C. Rivera Ramos

Materia: Derecho Penal: Reglas de Procedimiento Criminal. El Ministerio Público puede recurrir mediante certiorari luego de que se desestimen las acusaciones contra una persona al amparo de la Regla 64(p) de Procedimiento Criminal, por presunta ausencia total de prueba. No procedía desestimar las acusaciones contra el Sr. Nelson Eric Guadalupe Rivera por este fundamento.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Nelson Eric Guadalupe Rivera<br><br>Recurrido | CC-2019-0593 | *Certiorari* |

**El Juez Asociado señor RIVERA GARCÍA emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 12 de marzo de 2021.

Este caso nos da la oportunidad de aclarar si el Ministerio Público puede recurrir mediante *certiorari* luego de que se desestimen las acusaciones contra una persona al amparo de la Regla 64(p) de Procedimiento Criminal, *infra*, por presunta ausencia total de prueba. Contestada esta interrogante en la afirmativa, debemos determinar si procedía desestimar las acusaciones contra el Sr. Nelson Eric Guadalupe Rivera por este fundamento. Resolvemos que no.

I

Contra el señor Guadalupe Rivera se presentaron dos denuncias por hechos ocurridos el 25 de marzo de 2018. Se le imputó infringir los Arts. 93 del Código Penal de 2012 (Asesinato en Primer Grado) y 5.05 de la Ley de Armas de Puerto Rico de 2000 (Portación y Uso de Armas Blancas). El Tribunal de Primera Instancia encontró causa probable para

arresto por ambos delitos. No obstante, el foro primario no encontró causa probable para juicio en la vista preliminar.

El 24 de agosto de 2018 se celebró una vista preliminar en alzada. El Ministerio Público presentó ocho testigos, a saber: la Sra. Arelis Irizarry Ramos, la Sra. Yaritza Guadalupe Quiñones, el Sr. Christian Manuel Hernández Loyola, el Sr. Christian Lugo Ortiz, el Sr. José Alberto Quiñones Castro, el Sr. Kevin Pérez Cruz, el Sr. Daniel Caraballo Batiz y el Agte. Radamés Pagán Mercado. Luego de escuchar la prueba, el tribunal hizo una determinación de causa probable contra el recurrido y autorizó la presentación de las acusaciones por los delitos de asesinato atenuado (Art. 95 del Código Penal de 2012) y portación y uso de armas blancas (Art. 5.05 de la Ley de Armas de 2000).

Presentadas las acusaciones correspondientes, y celebrado el acto de lectura de acusación, el 23 de octubre de 2018 el señor Guadalupe Rivera presentó una solicitud de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal. En esencia, adujo que en la vista preliminar en alzada no se presentó prueba sobre varios elementos de los delitos imputados, entre ellos, la conexión de él con la comisión del delito de asesinato atenuado y la utilización o portación de un arma blanca. Esbozó que ninguno de los testigos declaró estos hechos, con excepción del agente Pagán Mercado. En el caso de la

declaración de este último, señaló que se trataba de "un testimonio flaco, vago, y estereotipado el cual es inadmisible".[1] Asimismo, argumentó que un video que presentó el Ministerio Público durante el testimonio del agente Pagán Mercado era exculpatorio "porque no refleja la conexión del Sr. Nelson Guadalupe Rivera con el asesinato del Sr. Roberto Cruz Acevedo ni con los elementos del Asesinato Atenuado ni la utilización de un arma blanca".[2]

Por su parte, el peticionario sostuvo que presentó prueba suficiente en la vista preliminar en alzada sobre todos los delitos por los cuales se acusó al señor Guadalupe Rivera, así como su conexión con estos. Arguyó que el juez que presidió la audiencia creyó en su totalidad las declaraciones de los testigos y, fundamentado en estos testimonios, encontró causa probable para juicio contra el señor Guadalupe Rivera.

Luego de una vista para atender los planteamientos de las partes, así como otros incidentes del proceso innecesarios pormenorizar, el 3 de abril de 2019 el Tribunal de Primera Instancia desestimó las acusaciones contra el recurrido. Concluyó que la prueba que presentó el Ministerio Público durante la vista preliminar en

---

[1] Moción solicitando la desestimación de la acusación al amparo de la Regla 64(p) de Procedimiento Criminal por ausencia total de prueba, Apéndice de la Petición de *certiorari*, pág. 203.

[2] Íd.

alzada no cumplió con el quantum de prueba exigido en esa etapa.

Esto provocó que el Estado acudiera al Tribunal de Apelaciones. Allí planteó que el foro primario erró al sustituir el criterio del juez que presidió la vista preliminar y desestimar las acusaciones contra el señor Guadalupe Rivera. En la alternativa, arguyó que el tribunal de instancia pudo haber hallado causa probable por el delito de agresión, el cual es uno menor incluido en el delito de asesinato.

El señor Guadalupe Rivera, por su parte, esbozó que el Tribunal de Apelaciones no tenía jurisdicción para atender el recurso de *certiorari* porque sería conceder un tercer turno al Ministerio Público dado a que dos jueces en el foro primario —el de la vista preliminar y el que ordenó la desestimación de las acusaciones— determinaron que no existía causa probable para acusar. Sostuvo que el Estado no puede recurrir de una determinación sobre suficiencia de la prueba. Adujo que estos planteamientos estaban sustentados en Pueblo v. Rivera Vázquez*,* 177 DPR 868 (2010). En específico, el señor Guadalupe Rivera argumentó que Rivera Vázquez*, supra*, estableció que la desestimación luego de una vista preliminar en alzada al amparo de la Regla 64(p) de Procedimiento Criminal, fundamentada en ausencia total de prueba, era una determinación de la cual el Ministerio Público no tiene remedio disponible.

El 31 de mayo de 2019, notificada el 3 de junio de 2019, el Tribunal de Apelaciones emitió una resolución mediante la cual denegó la expedición del recurso de *certiorari*.[3] La mayoría de los miembros del panel apelativo coligieron que el foro primario acertó al desestimar las acusaciones. En síntesis, resolvieron que el Tribunal de Primera Instancia actuó correctamente al sustituir el criterio del magistrado que presidió la vista preliminar en alzada, pues había ausencia de prueba sobre algunos hechos para sostener la determinación de causa probable para juicio.

Denegada una moción de reconsideración que presentó el Procurador General, este último acudió oportunamente ante este Tribunal mediante una Petición de *certiorari*. Señaló los errores siguientes:

> Erró el honorable Tribunal de Apelaciones, al denegar un recurso de certiorari, teniendo el efecto que subsista una determinación del Tribunal de Primera Instancia, la cual desestimó las acusaciones en contra del recurrido, cuando, como cuestión de derecho, sustituyó el criterio del juez que halló causa probable para juicio en vista preliminar en alzada, lo cual constituye un abuso de discreción, lo cual es revisable como cuestión de derecho.

> Erró […] al denegar el recurso de certiorari, teniendo el efecto que subsi[s]ta una determinación del Tribunal de Primera Instancia, la cual desestimó las acusaciones en contra del recurrido, aun cuando, como cuestión de derecho, debió haber hallado causa probable, por la comisión de un delito menor incluido al cual se le acusó.[4]

---

[3] El juez Rivera Colón emitió un voto disidente.

[4] Petición de *certiorari*, págs. 11-12.

El 6 de diciembre de 2019 emitimos una resolución mediante la cual expedimos el recurso de *certiorari*. Las partes comparecieron a presentar sus respectivos alegatos. Estando en posición para resolver, procedemos a hacerlo. Adelantamos que el primer señalamiento de error dispone del caso ante nuestra consideración.

## II

### A. Vista preliminar y vista preliminar en alzada

Toda persona imputada de un delito grave (*felony*) tiene derecho a que se celebre una vista preliminar.[5] La vista preliminar no constituye un minijuicio,[6] ni tiene el objetivo de establecer la culpabilidad del imputado más allá de duda razonable.[7] Se efectúa como salvaguarda de que el Estado posee "una justificación adecuada para continuar con un proceso judicial más extenso y profundo".[8] Esto es, la vista preliminar tiene el fin de que el Ministerio Público presente prueba que permita al tribunal hacer una determinación de que existe causa probable en cuanto a dos aspectos: (1) que el delito grave se cometió y (2) la persona imputada lo cometió.[9] Ahora bien, a diferencia de la audiencia que establece la Regla 6 de Procedimiento

---

[5] Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II.

[6] Pueblo v. Rivera Cuevas, 181 DPR 699, 706 (2011).

[7] Pueblo v. Ortiz, Rodríguez, 149 DPR 363, 374 (1999); Pueblo v. Rivera Alicea, 125 DPR 37, 41 (1989).

[8] Pueblo v. Negrón Nazario, 191 DPR 720, 733 (2014).

[9] Íd., pág. 732; Pueblo v. Rivera Alicea, *supra*, pág. 41 ("En su dinámica interna funciona a base de probabilidades, esto es, si es probable que se haya cometido el delito y si probablemente fue cometido por el imputado").

Criminal, *supra,* la vista preliminar cumple con mayores garantías y rigores, pues la prueba tiene que ser admisible en el juicio.[10]

La Fiscalía puede acusar por un delito grave sólo en los casos en que el foro primario determina que hay causa probable en esa etapa.[11] En ese sentido, si en la vista preliminar el magistrado o la magistrada determina que no hay causa probable para acusar por un delito grave, el Ministerio Público está impedido de instar la acusación.[12]

Ahora bien, una vista preliminar no se limita necesariamente a la determinación de causa o no causa probable por el delito imputado en la denuncia. Esta puede generar varios resultados. En Pueblo v. García Saldaña*,* 151 DPR 783, 789 (2000), señalamos que la vista preliminar puede culminar de una de tres maneras: (1) la determinación de causa probable para acusar por el delito por el cual se determinó causa probable para arresto (Regla 6), (2) la determinación de que no existe causa probable para acusar por ningún delito, o (3) la determinación de causa probable para acusar por un delito distinto o menor al que el Fiscal entiende procedente.

Ya sea ante la determinación de no causa probable para acusar, o cuando se emitió una determinación de causa probable por un delito distinto o inferior al imputado por

---

[10] Regla 103 de Evidencia de Puerto Rico, 32 LPRA Ap. VI.

[11] Pueblo v. García Saldaña*,* 151 DPR 783, 789 (2000).

[12] Regla 24(c) de Procedimiento Criminal, *supra.* Véase, además, Pueblo v. Jiménez Cruz, 145 DPR 803, 815 (1998).

el Ministerio Público, este último tiene disponible la opción de "someter el asunto de nuevo con la misma o con otra prueba" de igual o categoría superior ante el Tribunal de Primera Instancia.[13] Esta última oportunidad es la que se conoce como la *vista preliminar en alzada*.

La vista preliminar en alzada no es una revisión o trámite apelativo de la vista preliminar.[14] Conforme hemos reconocido, la alzada es una vista *de novo*, independiente, separada y distinta a la primera.[15] Precisamente, esta es la razón por la cual en la segunda vista preliminar ──la alzada── la Fiscalía tiene la libertad de presentar la misma prueba, más prueba o prueba totalmente distinta a la que evaluó el tribunal en la vista preliminar original.[16] Con lo que debe cumplir esta alzada es con el quantum de prueba que no alcanzó en la primera, a saber: la *scintilla* que justifique una determinación de causa probable, siempre sustentada en prueba que sería admisible en el juicio.[17]

Así pues, la vista preliminar en alzada puede resultar en lo siguiente: (1) en los casos en que hubo un dictamen de causa probable en la vista preliminar, determinar causa probable para acusar por el mismo delito

---

[13] Regla 24(c) de Procedimiento Criminal, *supra*.

[14] Pueblo v. García Saldaña*, supra*, pág. 790.

[15] Pueblo v. Ríos Alonso*, 149 DPR 761, 769 (1999); Pueblo v. Cruz Justiniano, 116 DPR 28, 30 (1985).

[16] Pueblo v. García Saldaña*, supra*, pág. 790; Pueblo v. Ríos Alonso*, supra*, pág. 769.

[17] Pueblo v. Negrón Nazario*, supra*, pág. 734. Véase, además, Pueblo v. Andaluz Méndez*, 143 DPR 656, 662 (1997).

o uno mayor; o (2) en los casos en que en la vista preliminar se determinó la inexistencia de causa probable, resolver que no hay causa probable para acusar por ningún delito, que existe causa probable por el delito imputado o que existe causa probable por un delito menor, distinto o mayor al imputado.[18]

**B.     Revisión de la determinación de causa probable para acusar**

Cuando el entonces acusado no está de acuerdo con la determinación de causa probable que dio paso a la acusación en su contra, puede presentar una moción de desestimación en virtud de la Regla 64(p) de Procedimiento Criminal, *supra.* En específico, este mecanismo está disponible en instancias en que la persona acusada considera que "la acusación, o alguno de los cargos incluidos en esta, […] ha sido presentada 'sin que se

---

[18] Véase Pueblo v. Ríos Alonso*, supra*, págs. 768-769 ("En los casos en que se celebra la vista preliminar en alzada, porque en la vista preliminar original se determinó *la inexistencia absoluta* de causa probable, el resultado obtenido en la vista preliminar en alzada siempre prevalecerá. Así, si el nuevo magistrado determina que no existe causa probable, el procedimiento contra el imputado finalizará. Del mismo modo, si el nuevo magistrado decide que existe causa probable por el delito imputado o por un delito menor incluido, el fiscal estará autorizado a presentar una acusación contra el imputado, por aquel delito para el cual se determinó que existía causa probable en alzada.

Ahora bien, la situación es distinta cuando […] en la primera vista preliminar, celebrada al amparo de la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, se ha determinado que existe causa probable, *pero por un delito menor al contenido en la denuncia.* En este supuesto, el magistrado que preside la vista preliminar en alzada sólo tiene autoridad para determinar si existe o no causa probable por el delito originalmente imputado en la denuncia o por algún otro delito menor incluido, pero mayor a aquel por el cual se determinó causa originalmente").

hubiera determinado causa probable por un magistrado con arreglo a la ley y a derecho'". (Corchetes omitidos).[19]

La moción de desestimación al amparo de la Regla 64(p), *supra,* procede en dos escenarios: (1) cuando se infringió alguno de los derechos o requisitos procesales de la vista preliminar; y (2) cuando se determinó causa probable para acusar, pese a la ausencia total de prueba sobre alguno de los elementos del delito imputado, incluido entre estos, la prueba sobre la conexión del acusado.[20]

A esos efectos, debemos ser conscientes de que la determinación de causa probable para acusar goza de una presunción de corrección.[21] Como consecuencia, en el segundo escenario señalado, hemos reiterado que se tiene que demostrar que el Ministerio Público no presentó prueba sobre algún elemento del delito o la conexión del acusado en la vista que dio lugar a la presentación del pliego acusatorio.[22] Sólo en ese caso estaríamos ante un supuesto de ausencia total de prueba.[23]

---

[19] Pueblo v. Negrón Nazario*, supra*, págs. 734-735.

[20] Íd., pág. 735. Véase, *e.g.*: Pueblo v. González Pagán*, 120 DPR 684 (1988); Pueblo v. Branch, 154 DPR 575, 584-585 (2001). Véase, además, Pueblo v. Rivera Cuevas, *supra*, págs. 707-708.

[21] Regla 304 de Evidencia de Puerto Rico, *supra.*

[22] Pueblo v. Negrón Nazario*, supra*, pág. 735

[23] Íd., pág. 736, haciendo referencia a Pueblo v. Rivera Cuevas*, supra*, pág. 708; Pueblo v. Rivera Vázquez*, 177 DPR 868, 878 (2010); Pueblo v. Ocasio Hernández, 139 DPR 84, 87-88 (1995); Pueblo v. Tribunal Superior*, 104 DPR 454, 459 (1975).

En lo que respecta al juez o jueza que evalúa la moción de desestimación, en Pueblo v. Negrón Nazario, 191 DPR 720, 736 (2014), dijimos que

> […] debe tener presente que **no se trata de una nueva determinación de causa probable.** Por lo tanto, si el tribunal entiende necesari[a] la celebración de una vista para dilucidar la moción, su tarea estará limitada a **examinar la prueba presentada durante la vista** en que se determinó causa probable para acusar. Evaluada *exclusivamente* tal prueba, el magistrado debe determinar si hubo ausencia total de prueba sobre la comisión del delito; ya sea porque no se presentó *alguna evidencia* sobre un elemento del delito imputado o porque no se presentó *alguna evidencia* sobre la conexión del acusado con el delito. **Solamente ante una situación de ausencia total de prueba es que procede sustituir el criterio del magistrado que inicialmente halló causa para acusar.** (Énfasis en el original y énfasis suplido).

### III

Atendemos primeramente los planteamientos del señor Guadalupe Rivera respecto a que la desestimación al amparo de la Regla 64(p), *supra*, no es revisable porque constituiría concederle una tercera oportunidad al Ministerio Público para sostener una determinación de causa probable para acusar. En esencia, el recurrido señala que

> el peticionario pretende, por quinta ocasión, que otro Tribunal (Supremo) evalúe y realice un análisis de la prueba que fue presentada ante el Tribunal que celebró la Vista Preliminar, la Vista Preliminar en Alzada, la Regla 64(p) y ante el Tribunal de Apelaciones, en un intento para tratar de probar que se ha presentado prueba sobre la alegada comisión de un delito y su supuesta conexión con el imputado.[24]

---

[24] Alegato en oposición, pág. 2.

Añade que "no se está recurriendo […] para revisar la interpretación de un asunto estrictamente de Derecho, […] se solicita al Tribunal que vuelva a recibir la misma prueba con la que cuenta el Ministerio Público, para que sea analizada y evalúe si 'tal actuación constituyó un abuso de discreción' por parte de los Tribunales inferiores".[25] Por lo tanto, el recurrido sostiene que este Tribunal no tiene jurisdicción para revisar los errores señalados por la Oficina del Procurador General. Arguye que el Ministerio Público tiene disponible únicamente la vista preliminar en alzada y no puede presentar un *certiorari*. Es decir, el señor Guadalupe Rivera entiende que la desestimación emitida por un juez de instancia al amparo de la Regla 64(p) de Procedimiento Criminal es final e irrevisable.

Adelantamos que los planteamientos del recurrido no tienen sustento en la naturaleza de la revisión de la determinación que se emite en virtud de esta disposición estatutaria.

En primer lugar, los abogados del señor Guadalupe Rivera confunden lo que este tribunal resolvió en Pueblo v. Rivera Vázquez*, supra*. Allí pautamos las consecuencias de una desestimación al amparo de la Regla 64(p)*, supra,* por ausencia total de prueba, pero para efectos de poder continuar o no los procedimientos **en el foro primario.**

---

[25] Íd.

Resolvimos que si, en efecto, hubo ausencia total de prueba en la vista preliminar, procede una vista preliminar en alzada.[26] En el caso de ausencia total de prueba en la vista preliminar en alzada, el Ministerio Público no puede tener otra oportunidad de presentar prueba en otra vista preliminar para obtener una determinación de causa probable para juicio.[27] Esto es, lo hicimos con el fin de no reconocerle al Estado **una tercera oportunidad de presentar prueba para sostener una determinación de causa probable para acusar**. No resolvimos que el Estado está impedido de recurrir al Tribunal de Apelaciones para que revise la decisión del juez que adjudicó, posteriormente, **la moción de desestimación**. Cuando señalamos que "si la desestimación se produce contra una vista preliminar *en alzada*, el Ministerio Público no tiene remedio alguno",[28] no nos referíamos a que no podía recurrir de este dictamen, sino a que no tenía otra vista preliminar para presentar prueba. Por

---

[26] Pueblo v. Rivera Vázquez, *supra,* pág. 884 ("cuando el fundamento que se invoca para la desestimación de la causa penal es que *hubo una ausencia total de prueba* en la vista preliminar *inicial*, entonces procede que se celebre una vista preliminar *en alzada*"). En Rivera Vázquez, *supra,* luego de la vista preliminar, el tribunal determinó causa probable para juicio por el delito de fraude por medio informático. Otro juez desestimó la acusación al concluir que no se presentó prueba sobre uno de los elementos del delito, excarceló al señor Rivera Vázquez y lo citó a otra vista preliminar. El día de la vista, el juez que la presidiría desestimó el caso por estimar que no tenía jurisdicción para celebrar una *nueva* vista preliminar, sino que procedía era una vista preliminar en alzada. Sin embargo, no celebró la vista en alzada ni refirió el caso para que la celebrara otro magistrado. Por su parte, el foro apelativo intermedio coligió que procedía dejar sin efecto la determinación de causa probable para arresto y comenzar el todo el proceso nuevamente de conformidad con Pueblo v. Camacho Delgado, 175 DPR 1 (2008).

[27] Pueblo v. Rivera Vázquez, *supra*, pág. 877.

[28] Íd., pág. 884.

consiguiente, de haberse incurrido en ausencia total de prueba, las imputaciones graves acabarían ahí.

De haber sido como sostiene el recurrido, en Pueblo v. Negrón Nazario, *supra*, ⸺resuelto cuatro años después de Rivera Vázquez, *supra*⸺ hubiéramos tenido que desestimar el recurso por falta de jurisdicción, pues fue el Procurador General el que recurrió al foro apelativo intermedio para que se revisara el dictamen desestimatorio que emitió el tribunal de instancia. Esto es, hubiéramos revocado al Tribunal de Apelaciones por revisar la decisión del foro primario que declaró "Ha Lugar" la solicitud de desestimación. No fue de esa forma que nos pronunciamos.

De igual manera, en Pueblo v. Rivera Cuevas, 181 DPR 699 (2011), revisamos un dictamen favorable al acusado, luego de que solicitara la desestimación de la acusación en su contra al amparo de la Regla 64(p), *supra.* Similar a lo ocurrido en el caso de autos, en la vista preliminar no se encontró causa para acusar, pero, celebrada la vista preliminar en alzada, el tribunal autorizó la presentación del pliego acusatorio por el delito de apropiación ilegal agravada. **Al analizar la prueba presentada en la vista preliminar en alzada**, concluimos que se cumplió con la *scintilla* de prueba que se requiere en esa etapa del proceso. Ello nos llevó a revocar al Tribunal de Apelaciones, declarar "No Ha Lugar" la moción de desestimación al amparo de la Regla 64(p) de Procedimiento

Criminal y ordenar la continuación de los procedimientos en el foro primario.

Para otra jurisprudencia en la misma dirección, véanse, *e.g.*: Pueblo v. González Pagán, 120 DPR 684 (1988) (el foro primario había declarado "Con Lugar" una moción desestimación de una acusación por el delito de asesinato. En su lugar, ordenó la presentación de la acusación por un delito menor incluido: homicidio. Este Tribunal revocó al foro primario y reinstaló la acusación por el delito de asesinato, en vista de que no estábamos ante un caso de ausencia total de prueba); Pueblo v. Rivera Alicea, 125 DPR 37 (1989) (revisamos mediante *certiorari* y revocamos la determinación de declarar Ha Lugar una moción de desestimación al amparo de la Regla 64(p), *supra*, fundándose en que la determinación de causa probable era contraria a la prueba, porque el foro primario no estaba ante un escenario de ausencia total de prueba).[29]

Pueblo v. Rivera Vázquez*, supra*, no dejó atrás la posibilidad de que un tribunal revisor pase juicio sobre la determinación de un juez de instancia de desestimar una acusación al amparo de la Regla 64(p), *supra*, por alegada ausencia total de prueba. Lo que rechazamos fue dejar sin efecto o invalidar la determinación de causa probable para arresto y la vista preliminar para que el Ministerio

---

[29] Véase, además, Pueblo v. Ocasio Hernández, *supra*, en el cual revisamos la decisión del Tribunal de Apelaciones de confirmar la determinación del foro primario mediante la cual desestimó ⸺en virtud de la Regla 64(p)⸺ una acusación por el delito de asesinato en segundo grado. Luego de evaluar la prueba, confirmamos el dictamen recurrido.

Público contara con oportunidades infinitas para cumplir con la carga probatoria necesaria para poder instar la acusación por el delito imputado en la denuncia. Es decir, rechazamos esa posibilidad porque tenía como consecuencia dar otra oportunidad al Estado de, en la misma vista que falló con su carga probatoria, suplir o subsanar el **defecto probatorio** en que incurrió. Ello resultaba impermisible. En ese sentido, Rivera Vázquez, *supra,* no impidió que el Estado recurra a un foro de mayor jerarquía para que revise la decisión de quien, ante una solicitud bajo la Regla 64(p), desestimó el caso por presunta insuficiencia de la prueba en la vista que dio base a la determinación de causa probable para acusar. Como vimos, tampoco lo resolvimos en casos posteriores.

En lo que concierne a poder o no recurrir mediante *certiorari*, lo que hemos resuelto es que no se puede recurrir interlocutoriamente de la vista preliminar o la vista preliminar en alzada.[30] Tampoco se puede recurrir mediante *certiorari* de la vista preliminar porque el Ministerio Público tiene disponible la vista preliminar en alzada y la persona imputada tiene el mecanismo de la Regla 64(p), *supra.*[31] Asimismo, hemos resuelto que el Ministerio Público sólo puede recurrir mediante *certiorari*

---

[30] Véase Pueblo v. Figueroa Rodríguez, 200 DPR 14 (2018); Pueblo v. Díaz de León, 176 DPR 913 (2009). Véase, además, Pueblo v. Encarnación Reyes, 191 DPR 176 (2014) (Sentencia).

[31] Pueblo v. Figueroa Rodríguez, *supra*, pág. 22; Pueblo v. Rivera Vázquez, *supra,* págs. 877-878, 884; Pueblo v. Ríos Alonso, *supra*, pág. 769.

**directamente de la vista preliminar en alzada** para revisar errores de derecho.[32]

Estas limitaciones se deben a que el *certiorari* es un mecanismo extraordinario que procedería, discrecionalmente, cuando no hay otro mecanismo disponible.[33] Precisamente, si el tribunal erró al desestimar una acusación al amparo de la Regla 64(p), el único mecanismo que tiene disponible el Estado para que se corrija un error que puede tener consecuencias graves es el *certiorari*.

De hecho, debemos resaltar que recientemente, en Pueblo v. Toro Martínez, 200 DPR 834, 854-855 (2018), este Tribunal resolvió ──en el contexto del proceso de revisión que comienza una persona sobre el juicio y la condena en su contra── que **no puede cuestionar la procedencia de las etapas subsiguientes a la revisión que ella misma comenzó.**[34] En el caso ante nuestra consideración aplica analógicamente este razonamiento a la revisión que comenzó el propio señor Guadalupe Rivera cuando presentó la

---

[32] Pueblo v. Rivera Vázquez, *supra,* pág. 877; Pueblo v. Cruz Justiniano, *supra*, pág. 30.

[33] Pueblo v. Díaz de León, *supra,* págs. 919-920.

[34] Véase Pueblo v. Toro Martínez, 200 DPR 834, 854-855 (2018) ("Sería ilógico pensar que el acusado puede apelar al foro apelativo intermedio y renunciar a su derecho a que otro juez no evalúe la corrección de la determinación del juzgador de los hechos, pero, además, le reconozcamos un derecho a que se queje ante el foro apelativo sin que el caso pueda completar todo el trámite revisor disponible."). Véanse, además, Pueblo v. Toro Martínez, *supra*, pág. 891 (Oronoz Rodríguez, J., Opinión disidente), citando a E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, T. II, Sec. 16.3, pág. 395 ("'el acusado que apela una sentencia de convicción asiente implícitamente a ulterior exposición por la misma ofensa, al menos en cuanto al proceso apelativo'"). (Corchetes omitidos).

solicitud de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal.[35] Ahí yace la diferencia sustancial con la revisión directa de la vista preliminar en alzada que puede solicitar el Ministerio Público, y la cual estaría limitada a revisar cuestiones estrictamente de derecho, desvinculadas de la prueba.

Aclarado lo anterior, debemos determinar si hubo **ausencia total de prueba** en la vista preliminar en alzada para sostener una determinación de causa probable para juicio por el delito de asesinato atenuado y violación al Art. 5.05 de la Ley de Armas de 2000, *infra*. Conforme expusimos, esa es la pregunta fundamental que debemos responder. Para ello, resulta indispensable repasar los delitos imputados. Veamos.

El Art. 95 del Código Penal de Puerto Rico de 2012 (33 LPRA sec. 5144) tipifica el delito de asesinato atenuado.[36] Esta disposición penal establece que el delito se comete por "[t]oda muerte causada a propósito, con conocimiento o temerariamente, que se produce como consecuencia de una perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable o súbita pendencia". Como consecuencia, el delito se consuma al incurrir en un acto intencional ——con propósito,

---

[35] Véase <u>Pueblo v. Jiménez Cruz</u>, *supra*, pág. 815 ("en un caso por *delito grave*, la moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra, **no tiene otro efecto que el de revisar la determinación de causa probable para acusar hecha después de haberse celebrado tal vista preliminar***"). (Énfasis suplido).

[36] Antes de las enmiendas incorporadas mediante la Ley Núm. 246-2014, el delito se conocía como "homicidio". Ley Núm. 146-2012 (2012 Leyes de Puerto Rico 1370).

conocimiento o temerariamente— que causa la muerte a otra, pero, por existir circunstancias atenuantes importantes, el delito y la pena cambian en beneficio del acusado.[37] En otros términos, se modifica el delito y la pena a favor del acusado por las circunstancias que disipan la gravedad de la conducta, pues, sin estas, la persona incurriría en el delito de asesinato en primer grado o asesinato segundo grado.[38]

En Pueblo v. Negrón Ayala, 171 DPR 406, 417 (2007), en el contexto de las frases "súbita pendencia" y "arrebato de cólera", señalamos que "la circunstancia atenuante consiste en que el acto del acusado *fue una reacción irreflexiva, pasional, súbita e inmediata, provocada por la víctima u otra persona actuando con ésta*". En virtud de la definición de homicidio que contenía el Código Penal de 1974,[39] expresamos que "[e]l homicidio presupon[ía] que el autor de la muerte actuó movido *por una provocación adecuada de tal naturaleza que lleve a una persona ordinaria a perder su dominio y actuar según sus impulsos mentales causados por la cólera,*

---

[37] Pueblo v. Negrón Ayala, 171 DPR 406, 417 (2007). Distinto al asesinato en primer grado, que apareja una pena fija de 99 años, y el asesinato en segundo grado, que conlleva una pena de cincuenta años, el asesinato atenuado apareja quince años de reclusión. Véanse los Arts. 94 y 95 del Código Penal de 2012 (33 LPRA secs. 5143 y 5144), respectivamente.

[38] "Asesinato es dar muerte a un ser humano a propósito, con conocimiento o temerariamente". Art. 92 del Código Penal de 2012 (33 LPRA sec. 5141). El Art. 93 del Código Penal, 33 LPRA sec. 5142, define el asesinato en primer grado y el asesinato en segundo grado.

[39] El delito de homicidio se instituía de la forma siguiente: "[t]oda persona que matare a otra en ocasión de súbita pendencia arrebato de cólera". Art. 85 del Código Penal de 1974, 33 LPRA sec. 4004 (derogado).

*pendencia o emoción violenta*".[40] Aclaramos, además, que "la sed de venganza nunca ser[ía] suficiente para catalogar el delito como un homicidio".[41] Dado a que el delito de asesinato atenuado requiere una "perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable o súbita pendencia", estos principios siguen vigentes.

Por su parte, el Art. 5.05 de la Ley de Armas de Puerto Rico (Ley de Armas de 2000), 25 LPRA sec. 458d (derogada), vigente al momento de la comisión de los hechos delictivos en este caso, establecía lo siguiente:

> Toda persona que sin motivo justificado **usare contra otra persona**, o la sacare, mostrare o usare en la comisión de un delito o su tentativa, manoplas, blackjacks, cachiporras, estrellas de ninja, cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, arma neumática, punzón, **o cualquier instrumento similar que se considere como un arma blanca**, incluyendo las hojas de navajas de afeitar de seguridad, garrotes y agujas hipodérmicas, o jeringuillas con agujas o instrumentos similares, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de seis (6) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un (1) día. Las penas que aquí se establecen serán sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío,

---

[40] Pueblo v. Negrón Ayala, *supra*, pág. 417.

[41] Íd., pág. 418. Al citar a Pueblo v. Lebrón, 61 DPR 657, 667 (1943), reiteramos que "si no existe esa provocación o si habiendo existido la misma no es lo suficientemente grave y la actuación del matador está fuera de toda proporción con el grado de la provocación, el acto de dar muerte constituye asesinato aunque el acusado no hubiese preconcebido la idea". (Corchetes y bastardillas omitidas). Pueblo v. Negrón Ayala, *supra*, pág. 418.

> bonificaciones o alternativas a la reclusión, reconocidas en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta.
>
> Queda excluida de la aplicación de este Artículo, toda persona que posea, porte o conduzca cualquiera de las armas aquí dispuestas en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación, oficio o por condición de salud, incapacidad o indefensión. (Énfasis suplido).

El delito instituido en el Art. 5.05 de la Ley de Armas, *supra*, presupone que la persona utilizó, sacó o mostró, sin motivo justificado, con el propósito de cometer un delito, cualquiera de los objetos mencionados en su texto u otro que se considere como un arma blanca. A esos fines, cabe notar que el Art. 1.02(d) del referido estatuto define arma blanca como "**un objeto punzante, cortante o contundente que pueda ser utilizado como un instrumento de agresión, capaz de infrigir [sic] grave daño corporal**". (Énfasis suplido).[42]

## IV

En la vista preliminar en alzada el foro primario hizo una determinación mediante la cual apreció la credibilidad de los testimonios recibidos. La única forma en que intervendríamos con la valoración que hizo el magistrado que presidió la audiencia sería ante la presencia de pasión, prejuicio, parcialidad o un error

---

[42] Art. 1.02(d) de la <u>Ley de Armas de Puerto Rico de 2000</u>, Ley 404-2000 (25 LPRA sec. 455(d)) (derogada), http://www.bvirtual.ogp.pr.gov/ogp/Bvirtual/leyesreferencia/PDF/Justicia/404-2000/404-2000.pdf.

manifiesto en la determinación.[43] En este caso no existe ni siquiera señalamiento alguno de parcialidad. Lo que se cuestionó fue la determinación de causa probable por presunta ausencia total de prueba al amparo de la Regla 64(p) de Procedimiento Criminal. Justamente, ante una moción de desestimación, se sostendrá la determinación de causa probable para acusar por los referidos delitos en una vista preliminar o vista preliminar en alzada, según corresponda, siempre que se presente alguna prueba sobre los elementos que los componen. En el contexto de una solicitud de desestimación por este fundamento, esa sería la única forma en que podríamos concluir que se cometió el error manifiesto que permitiría que sustituyamos el criterio del juez que presidió la vista preliminar o, en su caso, la vista preliminar en alzada. Bajo esos parámetros es que procede nuestra revisión.

El Ministerio Público argumenta que no procedía desestimar las acusaciones contra el señor Guadalupe Rivera. Arguye que la prueba presentada en la vista preliminar en alzada era suficiente para sostener la determinación de causa probable para acusar, según resolvió el juez que presidió la audiencia. En la alternativa, aduce que debió ordenarse que el proceso continuara por el delito de agresión.

Por su parte, el señor Guadalupe Rivera, si bien previamente argumentó que durante la vista preliminar en

---

[43] Pueblo v. Toro Martínez, *supra*, pág. 858.

alzada no se desfiló prueba sobre su conexión con los delitos imputados y sobre elementos esenciales de los delitos, utilizó su alegato para argüir la improcedencia de la revisión de la determinación del foro primario. Su alegato carece de la argumentación sobre los méritos del recurso de *certiorari* ante nuestra consideración. Sin embargo, como vimos, en lo que respecta a la jurisdicción de este Tribunal, sus planteamientos son improcedentes.

Hemos examinado detenidamente la totalidad de la grabación de la vista preliminar en alzada.[44] En lo que respecta a la prueba presentada, varios testigos coincidieron en que en la madrugada del 25 de marzo de 2018, mientras se encontraban en el establecimiento Arroyo Liquor Store, **pudieron observar al señor Guadalupe Rivera "como alterado" y molesto con el Sr. Roberto Ruiz Acevedo**, conocido como "Funche", quien resultó ser la víctima.[45] Ello, hasta el punto de que, producto de un altercado entre ambos, el guardia de seguridad del establecimiento comercial tuvo que retirar al recurrido en un momento dado de su interior.

---

[44] Debemos reconocer que la mayoría de los testigos de cargo demostraron alta resistencia para declarar contra el señor Guadalupe Rivera. Ello, hasta el punto de que los fiscales se vieron precisados a utilizar las declaraciones juradas que habían obtenido en el proceso de investigación para presuntamente refrescarles la memoria sobre lo ocurrido el día de los hechos imputados. Varios testigos reconocieron ser familiares, amigos o que conocían al recurrido desde hace varios años.

[45] El señor Lugo Ortiz, por ejemplo, señaló que al asomarse por la puerta de Arroyo Liquor Store ocurrió un "percance" entre el señor Cruz Acevedo y el recurrido, a quien identificó en el salón del tribunal, y describió como alterado y molesto.

Particularmente, el señor Lugo Ortiz, conocido como "Judas", testificó que escuchó al recurrido decir, en un tono alto, **"el Funche me tiene encojona'o"**. Por su parte, el señor Quiñones Castro, conocido como "Berto", declaró que cuando el señor Guadalupe Rivera salió del establecimiento comercial les dijo que **"ya el hombre lo tenía cansado con la grabaera y diciéndome bobo"**. Además, el señor Quiñones Castro testificó que escuchó al recurrido decir, medio molesto, lo siguiente: **"de hoy no pasa"**.[46]

Así las cosas, cuando el señor Guadalupe Rivera se encontraba en el exterior de Arroyo Liquor Store, el señor Cruz Acevedo salió y comenzó una pelea con el señor Lugo Ortiz. En específico, varios testigos declararon que vieron al señor Lugo Ortiz propinarle un puño al señor Cruz Acevedo. A ese golpe, este último respondió con un "latazo" en la cara del señor Lugo Ortiz. Inmediatamente, varias personas se involucraron en la pelea, incluido el señor Guadalupe Rivera, y golpearon a la víctima. El señor Quiñones Castro, por ejemplo, reconoció que tomó una silla y le intentó dar "dos sillazos" al señor Cruz Acevedo. La primera vez lo logró golpear, pero la segunda ocasión impactó a su primo, el señor Lugo Ortiz.

---

[46] En el contrainterrogatorio, el señor Quiñones Castro reconoció que previamente había declarado que lo que escuchó decir al recurrido ocurrió en el interior de Arroyo Liquor Store. Además, indicó que desconocía a quién se refería el señor Guadalupe Rivera al expresarse de esa manera.

Asimismo, numerosos testigos declararon que escucharon a una persona gritar "no, Nelsito no, sácalo" durante la trifulca.[47] Así lo reconoció, por ejemplo, el señor Caraballo Batiz y la señora Guadalupe Quiñones, prima del recurrido. De hecho, conforme con la grabación de la vista, la señora Guadalupe Quiñones le mostró al tribunal la posición en que vio al señor Guadalupe Rivera durante la pelea, la cual describió como "media erguida".

No obstante, la mayoría de los testigos testificaron que no pudieron observar si el recurrido tenía un objeto en sus manos o si fue quien mató al señor Cruz Acevedo, ya sea porque dijeron que como participaron en la pelea se habían enfocado en la víctima o porque en algún momento no estuvieron viendo lo que ocurría.[48]

Ahora bien, el señor Caballero Batiz señaló que en el interior del Arroyo Liquor Store pudo observar al recurrido y al señor Cruz Acevedo como discutiendo en el área de los baños. Según surge de la grabación de la vista preliminar en alzada, el testigo explicó lo que vio al hacer gestos con sus manos. Señaló que el recurrido salió

---

[47] Ese fue el caso de la señora Guadalupe Quiñones y el señor Quiñones Castro.

[48] A modo ilustrativo, el señor Hernández Loyola testificó que se enfocó en el señor Cruz Acevedo; que recordaba lo que él hizo, pero no lo que hicieron las demás personas. El señor Lugo Ortiz declaró algo similar. Este último testificó que nunca vio al recurrido con un cuchillo ni apuñalar a la víctima. De hecho, el testigo expresó que nunca vio a persona alguna cometer esos actos.

Asimismo, como parte del contrainterrogatorio, el señor Quiñones Castro declaró que no vio al recurrido apuñalar a la víctima ni lo observó cargando un cuchillo. En el redirecto, el testigo aclaró que no podía especificar qué hizo el señor Guadalupe Rivera durante el incidente porque estaba enfocado en su propia persona y en su primo, el señor Lugo Ortiz.

del negocio "como molesto" y las personas estaban "como gritando". En específico, el señor Caraballo Batiz declaró que el señor Guadalupe Rivera salió en dirección a las bombas donde se dispensa la gasolina. Mientras estaban en ese lugar, escuchó cuando el recurrido dijo que lo que había pasado dentro del Liquor Store fue que el señor Cruz Acevedo entró a tomarle un video y faltarle el respeto a unas féminas que se encontraban en el interior. Además, oyó cuando el señor Lugo Ortiz dijo que iba a pelear con el señor Cruz Acevedo. Así las cosas, este último salió del negocio y le manifestó al señor Lugo Ortiz que cuántos billetes quería. En ese momento, luego de un intercambio de palabras entre la víctima y el señor Lugo Ortiz, este último le propinó varios puños en la cara. El testigo declaró que la reacción del señor Cruz Acevedo fue darle al señor Lugo Ortiz con una lata de cerveza en el ojo derecho. Entonces, el señor Caraballo Batiz, el señor Hernández Loyola, el señor Quiñones Castro, el señor Pérez Cruz y el recurrido se metieron a la pelea. En cuanto a la participación de estos, el testigo indicó que le dieron varios puños al señor Cruz Acevedo. El señor Caraballo Batiz describió la posición de todos como circular y ubicó a la víctima en el centro.

El señor Caraballo Batiz admitió que agredió a la víctima con varios puños en la cara. Asimismo, el testigo indicó que cuando estaban peleando con el señor Cruz Acevedo "empezó a escuchar: "Nelson, no. Nelson, no". En

ese momento, el señor Guadalupe Rivera estaba en su lado derecho. En particular, observó cuando el recurrido le tiró puños hacía el cuerpo y la cara luego de entrar corriendo "[a]ñangotado" por su lado derecho. La forma en que el testigo percibió al señor Guadalupe Rivera cuando se introdujo en la pelea se le mostró al juez que presidía la vista preliminar en alzada. La fiscal la describió como "tirando su cuerpo hacía, la parte arriba inclinada hacia abajo". Entonces, el señor Caraballo Batiz indicó que el recurrido **"le tiró hacía el cuerpo y la cara"**; que le "tiró puños hacía el cuerpo y la cara" con ambas manos. Al ser confrontado por la Fiscalía, el testigo reconoció que previamente había declarado que el señor Guadalupe Rivera **"le tiró con la mano derecha"**. De hecho, reconoció que la primera vez que estaba declarando que el recurrido utilizó ambas manos era ese día en el salón del tribunal.

Cabe resaltar que el señor Caraballo Batiz señaló que ese día observó al señor Guadalupe Rivera con su **"mano derecha cerrada, <u>como si escondiese algo</u>"**; **"como si estuviese escondiendo algo en la mano derecha"**. Entonces, **"le tiró […] hacía el cuerpo […] varias veces"**. El testigo declaró que "ahí fue que se fue, ahí fue que se fue [a]ñangota'o" como para irse, refiriéndose al recurrido. De la grabación surge que el testigo hizo varios gestos con la mano para beneficio del tribunal. Además, **el testigo reiteró en dos ocasiones que <u>el señor Guadalupe Rivera tenía sangre en la camisa y en la mano derecha</u>. El**

**testigo declaró que <u>el señor Cruz Acevedo entonces se cayó al piso</u>.**[49]

En el contrainterrogatorio, entre otras cosas, el señor Caraballo Batiz reconoció que nunca había declarado que viera un cuchillo o algún objeto punzante en las manos del señor Guadalupe Rivera, pero reiteró que vio que **tenía sangre en la mano derecha y en la camisa**, aunque no podía asegurar de donde salió la referida sangre. El testigo señaló que previamente había declarado que el recurrido tenía el puño cerrado, con el pulgar hacía arriba. De hecho, surgió que el testigo había hecho gestos al fiscal previamente mostrándole la forma en que el señor Guadalupe Rivera **movía su mano "hacía el frente y hacía atrás"**.

En el interrogatorio redirecto, entre otras cosas, el señor Caraballo Batiz volvió a mostrarle al tribunal la forma en que se encontraba el recurrido al alejarse de la pelea. Además, el testigo reconoció que, aunque no podía asegurar qué era lo que tenía el señor Guadalupe Rivera en la mano, previamente había declarado que el recurrido **tenía el puño cerrado como si tuviera algo en la mano**. Reiteró, asimismo, que vio cuando el señor Guadalupe Rivera "le tiró" varias veces a la víctima utilizando su mano derecha. El testigo declaró, además, que también vio al recurrido propinarle puños en la cara al señor Cruz Acevedo.

---

[49] El Ministerio Público le presentó dos fotografías al señor Caraballo Batiz. En estas, según surge de la grabación, se mostraba la víctima luego de morir.

Como parte de la prueba, se presentaron varias fotografías. Además, se presentó un video que mostraba la entrada de Arroyo Liquor Store y, por lo tanto, parte del evento que culminó con la muerte de la víctima. Este video fue explicado detalladamente, según la percepción del agente Pagán Mercado, quien estuvo a cargo de entrevistar a varios testigos. En específico, este último esbozó que las personas que identificaron que habían estado involucradas en la pelea fueron entrevistadas. En esencia, su testimonio coincidió con lo declarado por estos durante la vista preliminar en alzada.[50] El agente Pagán Mercado señaló que la declaración de los entrevistados se corroboraba con el video. Coetáneamente, explicó el orden en que las personas se mostraban entrando al altercado. Indicó, además, que el primero que se veía saliendo de la pelea era el señor Guadalupe Rivera, a quien, al igual que lo hicieron los demás testigos, identificó en el salón del tribunal. El agente Pagán Mercado describió cómo el video

---

[50] En cuanto a la declaración del señor Caraballo Batiz, en lo pertinente, le indicó que en la pelea no había nadie ubicado en su lado derecho; que el recurrido entró a la pelea por ese lado, como "añangotado", con la mano cerrada. El agente explicó la forma en que el señor Caraballo Batiz le había descrito la manera en que estaba la mano derecha del señor Guadalupe Rivera. El agente Pagán Medina señaló que el señor Caraballo Batiz le expresó que el recurrido "portaba algo en su mano derecha que sobresalía; que el detalle él no [se] lo podía precisar qué era lo que llevaba en esa mano, pero que sí sobresalía algo". Simultáneamente, le dijo que las personas le gritaban: "Nelson, no; nelson, no", mientras le "tiraba con la mano derecha". El agente Pagán Medina declaró que le indicó que el señor Guadalupe Rivera le tiró de una a tres veces y que cuando **"sacó la tercera vez llevaba sangre en su puño y parte de la ropa"**. Posteriormente, el recurrido salió erguido de la pelea, **escondiendo la mano y tratando de guardar algo en el área del bolsillo**. Luego el señor Guadalupe Rivera se retiró del lugar. El agente declaró que la versión de los demás testigos fue "prácticamente la misma".

mostraba cuando el recurrido salía de la pelea y hacía un movimiento para guardar algo en su bolsillo.

En el contrainterrogatorio, entre otras cosas, **la propia Defensa resaltó que el señor Caraballo Batiz reconoció que llevaba algo en la mano derecha**, aunque no podía precisar qué era. Además, que el señor Caraballo Batiz **vio sangre en la mano del señor Guadalupe Rivera**. Por otro lado, el agente Pagán Mercado declaró que el video sólo mostraba el lado izquierdo del recurrido. Asimismo, el agente Pagán Mercado reconoció que el video no mostraba la totalidad del evento, pues había un periodo durante el cual las personas salieron del alcance de la cámara.

Por otro lado, las partes estipularon lo que el patólogo que realizó la autopsia del señor Cruz Acevedo declararía en la vista preliminar. Conforme surge de la estipulación, entre otras cosas, este hubiera declarado que

> la herida más grande observada en el cuerpo del occiso es **una herida de arma blanca tipo punzante** en homotorax izquierdo con configuración elíptica. La misma lleva una **trayectoria que va de adelante hacia atrás, ligeramente de abajo hacia arriba y ligeramente de izquierda a derecha.** La herida perfora la piel, tejido y músculos, produce perforación del saco pericárdico, perfora la pared anterior del ventrículo derecho y penetra en el interior de cavidad ventricular, lo cual permite pérdida de sangre. **Esta herida de arma blanca perforó el corazón,** lo que ocasionó que se acumule la sangre dentro del "saco del corazón, se coagula

y no permite que el corazón bombee sangre". (Énfasis suplido).[51]

## V

De entrada, debemos resaltar que nuestro modelo evidenciario reconoce, y así lo establece la Regla 110(h) de Evidencia, 32 LPRA Ap. VI, que un hecho es susceptible de ser demostrado mediante prueba directa o a través de prueba indirecta o circunstancial.[52] Por lo tanto, no es indispensable que se presente prueba de que un testigo observó expresamente un hecho, si de las circunstancias que pudo presenciar se puede inferir razonablemente.[53] Tampoco es requisito que la prueba circunstancial cumpla con el estándar de prueba que se exige en un juicio. Como dijimos, lo que se evalúa ante una solicitud de desestimación al amparo de la Regla 64(p) de Procedimiento

---

[51] Estipulación del testimonio del Dr. Javier Serrano, Apéndice de la Petición de *certiorari*, pág. 186. La estipulación también señalaba que "[o]tras evidencias de trauma están presentes, ocho, (seis contiene 2 heridas), pero solas o en conjunto no son suficientes para causa la muerte de la persona. Las mismas pueden ser compatibles con una golpiza". Íd.

[52] Véanse: Pueblo v. Rivera Rivera, 117 DPR 283, 294 (1986) ("la evidencia circunstancial es intrínsecamente igual que la evidencia directa"); Pueblo v. Picó Vidal, 99 DPR 708 (1971); Pueblo v. Salgado Vázquez, 93 DPR 380, 383 (1966).

[53] La Regla 110(h) de Evidencia, 32 LPRA Ap. VI, define evidencia indirecta o circunstancial como "aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual por si o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia". El profesor Emmanuelli Jiménez sostiene correctamente que este tipo de prueba es la "que presenta una base de hechos que mediante el uso de inferencias o presunciones, lleva razonablemente a la conclusión sobre otros hechos. Es una inferencia —deducción que hace en su discernimiento el Juez, Jueza o el jurado— que surge de una serie de hechos probados. Para que se pueda dar por probado un hecho mediante evidencia circunstancial es necesario que exista una relación racional entre el hecho básico probado y el hecho inferido". (Escolios omitidos). R. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño, 4ta ed., San Juan, Ed. SITUM, 2015, págs. 129-130.

Criminal, *supra*, por ausencia total de prueba es si, en efecto, no se presentó prueba alguna ⸺directa o indirecta⸺ sobre algún elemento del delito o la conexión del acusado. Ante esa premisa fundamental, es forzoso concluir que este caso no presenta un escenario que cumpla con este requisito y, por consiguiente, diera lugar a la desestimación de las acusaciones contra el señor Guadalupe Rivera.

Primero, en la vista preliminar en alzada se presentó prueba de la muerte del señor Cruz Acevedo y la causa de muerte. Además, numerosos testigos identificaron al recurrido en la sala del tribunal como una de las personas que estuvieron involucradas en la pelea con la víctima. De hecho, las declaraciones de los testigos incluyeron una narración de eventos previos en donde percibieron que el señor Guadalupe Rivera se mostró molesto con el señor Cruz Acevedo al punto de escucharlo decir expresiones como las siguientes: "el Funche me tiene encojona'o"; "de hoy no pasa", y que lo tenía cansado con la "grabaera" y diciéndole bobo. La prueba que presentó el Ministerio Público, y así fue ratificada en los contrainterrogatorios de la Defensa, tendía a demostrar que la única persona con la que el recurrido tuvo un "percance" o estuvo molesta esa madrugada fue con la víctima. Aun cuando varios testigos expresaron que no podían asegurar a quién se refería el recurrido, el juez pudo inferir que las expresiones surgían por los eventos que ocurrieron en el

interior del establecimiento comercial con el señor Cruz Acevedo.

Asimismo, se presentó prueba de que **durante la pelea**, a pesar de que estaban involucradas varias personas, los testigos declararon que escucharon decir "no, Nelsito no; sácalo" y "Nelson, no; Nelson, no". A pesar de que varios de los testigos declararon que no vieron si el recurrido tenía una cuchilla o un objeto punzante en su mano, uno de ellos declaró que el señor Guadalupe Rivera tenía su "mano derecha cerrada, como si escondiese algo"; "como si estuviese escondiendo algo en la mano derecha". De hecho, se declaró que "le tiro […] hacia el cuerpo […] varias veces" y "ahí fue que se fue, ahí fue que se fue [a]ñangota'o", refiriéndose a actos cometidos por el recurrido. Además, se presentó prueba de que se observó al señor Guadalupe Rivera con sangre en la camisa y **en la mano derecha.** De la grabación emana que varios testigos le mostraron al juez la manera en que estuvo ubicado el señor Guadalupe Rivera, así como los movimientos que hizo con su mano. Asimismo, una testigo reconoció que le gritaron "llévatelo, llévatelo", en clara indicación de que retirara al recurrido de la escena.

Por otro lado, al examinar detenidamente el video que se presentó como prueba, aun cuando no se puede ver la mano derecha del recurrido, se puede observar cómo el brazo izquierdo se balancea al alejarse del establecimiento comercial. Ese movimiento no se replica en

el brazo de derecho. Así pues, es innegable que, de conformidad con el testimonio de los testigos, el juez pudo inferir que en ese momento el señor Guadalupe Rivera ocultaba el arma blanca en su bolsillo derecho, al igual como lo percibió el agente Pagán Mercado.

En vista de lo anterior, no hubo ausencia total de prueba en la vista preliminar en alzada. El juez pudo inferir que el recurrido ocasionó la muerte al señor Cruz Acevedo por una perturbación mental o emocional suficiente, o súbita pendencia ante la disputa que tuvieron esa misma noche en Arroyo Liquor Store. Nuestra función al evaluar si procedía desestimar no se extiende a pasar juicio en cuanto a si se probaron las circunstancias atenuantes que contiene el delito, las cuales indefectiblemente favorecen al señor Guadalupe Rivera.[54]

Finalmente, en vista de la prueba circunstancial que se presentó durante la vista preliminar en alzada, pudo inferir que el objeto que el recurrido escondía en su mano

---

[54] La revisión de este caso se limita a evaluar si en la vista preliminar en alzada se probaron los elementos que operan contra el recurrido. No podemos pasar juicio respecto a si se demostraron los elementos atenuantes del delito. Ello, con la consecuencia de que, en su defecto, lo que hubiera correspondido era una determinación de causa probable para juicio por un delito mayor. Es decir, la ausencia de prueba sobre los elementos atenuantes que contiene el delito operaría contra el acusado y no a su favor. Así pues, incluso si estuviéramos en desacuerdo, no podemos aumentar el delito por el cual se determinó causa probable en la vista preliminar en alzada. Ahí convertiríamos nuestro dictamen en una tercera oportunidad para que el Ministerio Público consiga la determinación de causa probable para juicio que no obtuvo en la vista preliminar y la vista preliminar en alzada. Véase Pueblo v. Díaz de León, *supra*, pág. 919. Una persona acusada no puede salir peor de la Regla 64(p), *supra*, que de la vista preliminar que dio base a las acusaciones en su contra. Además de resultar impermisible, desalentaríamos la utilización de un mecanismo que se creó en protección de las personas que se ven en la delicada posición de enfrentar imputaciones criminales en su contra. Véase, por analogía, Pueblo v. Ríos Alonso, *supra*, pág. 770, en el contexto del resultado que puede obtener la Fiscalía en la vista preliminar en alzada.

derecha era el arma blanca tipo punzante que se utilizó contra el señor Cruz Acevedo y le provocó la muerte. Los foros inferiores erraron al sustituir el criterio del juez que presidió la vista preliminar en alzada.

**VI**

Por los fundamentos antes expuestos, revocamos la Sentencia del Tribunal de Apelaciones, así como los dictámenes emitidos por el Tribunal de Primera Instancia mediante los cuales desestimó las acusaciones contra el señor Guadalupe Rivera por violación a los Arts. 95 del Código Penal de 2012, *supra*, y 5.05 de la Ley de Armas, *supra*. Se devuelve el caso al foro primario para la continuación de los procedimientos contra el recurrido.

Se dictará Sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Nelson Eric Guadalupe Rivera<br><br>Recurrido | CC-2019-0593 |

SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2021.

Por los fundamentos antes expuestos, revocamos la Sentencia del Tribunal de Apelaciones, así como los dictámenes emitidos por el Tribunal de Primera Instancia mediante los cuales desestimó las acusaciones contra el señor Guadalupe Rivera por violación a los Arts. 95 del Código Penal de 2012, *supra*, y 5.05 de la Ley de Armas, *supra*. Se devuelve el caso al foro primario para la continuación de los procedimientos contra el recurrido.

Notifíquese de inmediato.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emite la expresión siguiente:

"Estoy conforme con la Opinión mayoritaria de este Tribunal. Ahora bien, me veo precisado a hacer esta corta expresión, pues la Opinión Disidente del distinguido compañero Juez Asociado señor Estrella Martínez cita en varias instancias como parte del fundamento para su posición el caso de *Pueblo v. Cátala Morales*, 197 DPR 214 (2017). Es menester señalar que tal Opinión no aplica a los hechos y al derecho de este caso. En *Pueblo v. Cátala Morales,* supra, establecimos que al iniciar cada encausamiento criminal contra un ciudadano el Estado cuenta solo con dos oportunidades para convencer al Tribunal de Primera Instancia de que existe causa para someter a un ciudadano al proceso de un juicio criminal en los méritos. Ese caso es la secuela de *Pueblo v. Cruz Justiniano,* 116 DPR 28 (1985), y **ambos se enmarcan en el contexto de la garantía constitucional a juicio rápido y la Regla 64(n), 34 LPRA Ap. II, que establece limitaciones al Estado muy distintas a las que establece el inciso (p), conforme hemos interpretado.**

En otras palabras, en este caso la disposición reglamentaria y las circunstancias son distintas. En esta ocasión **el Estado no pretende que el caso se inicie de nuevo ante un fallo en los términos de juicio rápido de la Regla 64(n),** *supra*, **sino simplemente que un tribunal apelativo revise discrecionalmente la determinación de un juez superior que revocó a otro juez de igual jerarquía, porque no estuvo de acuerdo con la apreciación de la prueba que este hizo.** Eso nada tiene que ver con lo establecido en *Pueblo v. Cátala Morales,* supra".

El Juez Asociado señor Estrella Martínez emite una Opinión Disidente. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez disienten sin opinión escrita.

El Juez Asociado señor Feliberti Cintrón está inhibido.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | | |
|---|---|---|
| Peticionario | | |
| v. | CC-2019-0593 | Certiorari |
| Nelson Eric Guadalupe Rivera | | |
| Recurrido | | |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 12 de marzo de 2021.

Hoy, una mayoría de este Tribunal actúa contrario a nuestros pronunciamientos sobre los mecanismos procesales que tiene disponible el Ministerio Público en esta etapa de los procedimientos y a los derechos de los acusados y las acusadas. A través de este reconocimiento jurídico, se permite de _facto_ lo que habíamos prohibido de _jure_, a saber: que el Estado logre una causa probable para acusar después de una desestimación por ausencia total de prueba, mediante una celebración de una "tercera vista preliminar en alzada apelativa". En consecuencia, se altera el estado de derecho para brindar una tercera oportunidad al Ministerio Público -esta vez reforzado con el Procurador General- para probar su caso, lo que no pudo lograr en el foro primario, a pesar de las ventajas que el andamiaje procesal penal le provee en esta etapa de los procedimientos.

Paradójicamente, hoy una Mayoría pauta que un ciudadano que obtiene dos (2) desestimaciones **por ausencia total de prueba** se encuentra en peor posición que uno que obtuvo dos (2) determinaciones de no causa en las vistas preliminares. Por no compartir este proceder jurídico y sostener que una desestimación por ausencia total de prueba no es revisable mediante certiorari, por haber tenido el Ministerio Público dos (2) oportunidades fallidas y no estar presentes las limitadas excepciones jurisprudenciales, disiento.

**I**

En el caso de autos, hubo una primera determinación de no causa para acusar tras la celebración de la vista preliminar original. A raíz de ello, el Ministerio Público acudió válidamente a una vista preliminar en alzada. Tras la celebración de esta segunda vista a la que tiene derecho el Estado, se determinó causa probable para acusar, aunque por un delito inferior.[55] Una vez se presentaron las acusaciones, el imputado instó una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, en la cual planteó la ausencia total de prueba para los delitos imputados. Esta vez, **un tercer magistrado evaluó la prueba presentada en la vista preliminar en alzada y determinó que,**

---

[55]Las denuncias fueron por los delitos de asesinato en primer grado y utilización de arma blanca sin motivo justificado. Luego, en la vista preliminar en alzada, se determinó causa probable para acusar por los delitos de asesinato atenuado y la utilización de arma blanca sin motivo justificado.

**efectivamente, procedía la desestimación por ausencia total de prueba.** En particular, señaló que, aunque la prueba ubicaba al acusado en la escena de la trifulca, hubo ausencia total de la misma para demostrar la probabilidad de que éste fuese el perpetrador de la muerte objeto de las acusaciones. Así pues, el Tribunal de Primera Instancia dictó dos (2) sentencias de desestimación. Como consecuencia de tal dictamen, **el Estado acudió mediante** <u>**certiorari**</u> **ante el Tribunal de Apelaciones con el propósito de que un cuarto juzgador, en este caso un panel de tres (3) jueces, evaluara la prueba y determinara si era suficiente para hallar causa probable para acusar.** Ante la denegatoria del Tribunal de Apelaciones de expedir el recurso de <u>certiorari</u>, la controversia llega ante nuestra consideración.

## II

Ante ese cuadro, la controversia estriba en si se le debe reconocer al Estado la facultad de revisar mediante <u>certiorari</u> la desestimación de una acusación por ausencia total de prueba. Particularmente, cuando de manera reiterada se ha pautado que una determinación de no causa probable para acusar es final y **no** es revisable ante el Tribunal de Apelaciones.

### A.

La Regla 23(a) de Procedimiento Criminal, 34 LPRA Ap. II, dispone que "[s]e celebrará una vista preliminar en aquel caso en que se imputare a una persona un delito grave". El objetivo de la vista preliminar es determinar

si existe causa probable para procesar a una persona imputada por un delito grave, para así evitar que sea sometida injustificadamente al rigor de un proceso criminal. Pueblo v. García Saldaña, 151 DPR 783, 788 (2000). Con ello, se pretende que el Estado demuestre que tiene la evidencia requerida para procesar criminalmente al imputado y así evitar procesamientos arbitrarios contra los ciudadanos. Pueblo v. Ríos Alonso, 149 DPR 761, 766 (1999).

En esta etapa, el Ministerio Público tiene la obligación de presentar al juzgador que preside la vista preliminar aquella prueba que establezca cada uno de los elementos del delito imputado y su conexión con la persona denunciada. Íd., pág. 767. Se puede decir que esta carga probatoria es modesta, pues el Estado sólo tiene que presentar alguna prueba de cada uno de los elementos del delito y de la conexión con el imputado, a diferencia del juicio en el que se exige prueba más allá de duda razonable. E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, Cap. 22, pág. 89. Así, pues hablamos de que se trata de una scintilla de evidencia. Pueblo v. Rivera Cuevas, 181 DPR 699, 707 (2011). "Esta escasa carga probatoria permite al fiscal no tener que presentar toda la prueba de cargo disponible al momento, sino tan sólo aquella necesaria para establecer la causa probable." Chiesa Aponte, op. cit., pág. 91.

Si el resultado de la vista preliminar es una determinación de no causa probable, el Ministerio Público no puede presentar acusación alguna. 34 LPRA Ap. II, R. 24(c). En tal escenario, o si se determinara causa probable por un delito inferior, el Ministerio Público cuenta con la alternativa de la vista preliminar en alzada. Es decir, que "podrá someter el asunto de nuevo con la misma o con otra prueba a un magistrado de categoría superior del Tribunal de Primera Instancia". Íd.

De esta forma, el sistema judicial criminal le provee al Ministerio Público dos (2) oportunidades para lograr una determinación de causa probable para acusar, a saber: la vista preliminar y la vista preliminar en alzada. Precisamente, esta última es el recurso ordinario que proveen las Reglas de Procedimiento Criminal para que el Ministerio Público pueda remediar la determinación adversa que tuvo en la vista preliminar original. Pueblo v. Díaz De León, 176 DPR 913, 922-923 (2009).

La vista preliminar en alzada es una de novo, separada e independiente de la primera vista preliminar. Pueblo v. Ríos Alonso, supra, pág. 769. Por ello, el Ministerio Público tiene la libertad de presentar en esta etapa la prueba que entienda suficiente, ya sea la misma presentada en la vista original o prueba totalmente distinta. Pueblo v. García Saldaña, supra, pág. 790. A través de esta segunda vista, el Ministerio Público obtiene una nueva oportunidad para procurar una determinación de causa probable por el delito grave que

entiende ha cometido la persona imputada. <u>Pueblo v. Rivera Vázquez</u>, 177 DPR 868, 877 (2010). Así pues, la vista preliminar <u>de novo</u> es un procedimiento especialmente diseñado para aventajar al Ministerio Público en la consecución de una autorización para acusar. <u>Pueblo v. Figueroa et al.</u>, 200 DPR 14, 23 (2018). A no ser por el mecanismo de la vista en alzada, el Ministerio Público carecería de recursos para impugnar una determinación adversa en la vista preliminar o una determinación que, a pesar de no resultarle adversa, no le satisface. <u>Pueblo v. Figueroa et al.</u>, supra, pág. 22; <u>Pueblo v. Ríos Alonso</u>, supra, pág. 769.

Distinto a las oportunidades que el andamiaje procesal penal le reconoce al Ministerio Público, el acusado o la acusada sólo cuenta, en esta etapa, con el mecanismo de la solicitud de desestimación ante una determinación de causa probable. Es decir, que es su remedio exclusivo. <u>Pueblo v. Rivera Vázquez</u>, supra; <u>Pueblo v. Rivera Cuevas</u>, supra, pág. 707.

La Regla 64 de Procedimiento Criminal, 34 LPRA Ap. II, establece los fundamentos en los cuales se puede basar una moción de desestimación. Entre estos, el inciso (p) reconoce como un posible fundamento para desestimar: "[q]ue se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho". 34 LPRA Ap. II, R. 64(p). Así, el acusado

puede invocar dos premisas, a saber: (1) que hubo ausencia total de prueba en la determinación de causa probable para acusar o (2) que se violó alguno de los requisitos o derechos procesales. Pueblo v. Rivera Cuevas, supra, págs. 707-708. Ahora bien, en esta etapa procesal existe una presunción de corrección a favor de la determinación de causa probable. Al acusado o la acusada le corresponde convencer al tribunal de que, en la vista preliminar, ya sea la original o en la alzada, hubo ausencia total de prueba sobre algún elemento de responsabilidad criminal. E.L., Chiesa Aponte, op cit., pág. 95. En comparación con la carga probatoria del Estado antes mencionada, la carga probatoria del imputado o la imputada es considerablemente mayor.

**B.**

Una vez el Ministerio Público utiliza el mecanismo de la vista preliminar en alzada, agota todas sus posibilidades para obtener una determinación de causa probable. Ello es así, pues una determinación en los méritos de una vista preliminar en alzada sobre la inexistencia de causa probable es final y **no revisable por un tribunal de superior jerarquía.** Pueblo v. Rivera Vázquez, supra; Pueblo v. Figueroa et al., supra, pág. 24; Pueblo v. Díaz De León, supra, pág. 919; Pueblo en interés menor K.J.S.R., 172 DPR 490, 500 (2007); Pueblo v. Cruz Justiniano, 116 DPR 28, 30 (1984). Por excepción, sólo sería revisable si se fundamenta en cuestiones estrictamente de derecho y desvinculadas de la apreciación

de la prueba. Pueblo v. Figueroa et al., supra, pág. 24;
Pueblo en interés menor K.J.S.R., supra, pág. 500; Pueblo
v. Rivera Alicea, 150 DPR 495, 499-500 (2000). Si se trata
de un asunto que entremezcla hechos y derecho tampoco
sería revisable. Pueblo en interés menor K.J.S.R., supra,
pág. 502. Entiéndase, el certiorari está limitado
exclusivamente a revisar si el foro inferior cometió un
**error de derecho** al determinar causa o la ausencia de
ella. Pueblo v. Figueroa et al., supra; Pueblo v. Díaz De
León, supra, pág. 919; Pueblo en interés menor K.J.S.R.,
supra, pág. 500. En resumen, "al iniciar cada
encausamiento criminal contra un ciudadano, el Estado
cuenta con solo dos oportunidades para convencer al
Tribunal de Primera Instancia de que existe causa para
someter a un ciudadano al proceso de un juicio criminal en
los méritos." Pueblo v. Cátala Morales, 197 DPR 214, 225
(2017).[56]

Una vez aclarado que una determinación de no causa
probable es final y no revisable si está de por medio la
apreciación de la prueba, ¿qué sucede cuando se desestima
una determinación de causa probable por ausencia total de
prueba? Cuando la desestimación se da en la etapa de vista
preliminar original, el Ministerio Público aún tiene
disponible la vista preliminar en alzada. Pueblo v. Rivera
Vázquez, supra. Ahora bien, si la desestimación se produce

---

[56]En Pueblo v. Cátala Morales, 197 DPR 214 (2017), se
reafirmó lo resuelto en Pueblo v. Cruz Justiniano, 116 DPR
28 (1984), en cuanto a que la decisión de una vista
preliminar en alzada es final e inapelable.

contra una vista preliminar en alzada, el Ministerio Público habría agotado todos sus mecanismos disponibles. Como muy bien se explicó en Pueblo v. Rivera Vázquez, supra:

> [C]uando un juez desestima una acusación por una ausencia total de prueba en la vista preliminar, en efecto está resolviendo que en esta audiencia se debió emitir una determinación de "no causa" probable para acusar. **Por eso, finalmente, si la desestimación se produce contra una vista preliminar *en alzada*, el Ministerio Público no tiene remedio alguno.** (Énfasis suplido).

Por consiguiente, hemos reconocido expresamente que, además de la adjudicación en los méritos de la causa penal, otros eventos procesales pueden dar por terminada la acción contra el imputado, como lo sería la determinación de 'no causa' para presentar una acusación en la etapa de vista preliminar en alzada, puesto que ésta, por su naturaleza y finalidad, impide el comienzo de otro proceso por ese delito. Pueblo v. Cátala Morales, supra, pág. 225; Pueblo v. Pérez Pou, 175 DPR 218, 229-230 (2009).

### III

Contrario a lo antes expuesto, la Opinión que hoy provoca mi disenso reconoce erróneamente que el Ministerio Público puede ir en revisión de una desestimación por ausencia total de prueba luego de celebrada una vista preliminar en alzada. Tal interpretación le extiende al Estado más oportunidades de lograr una determinación de causa probable, lo que resulta contrario a nuestro ordenamiento jurídico.

Según vimos, el andamiaje procesal penal favorece al Estado para lograr una determinación de causa probable para acusar. De entrada, el quantum de prueba del Ministerio Público, tanto en la vista preliminar original como en la alzada, es mínimo. Sólo se le requiere presentar alguna prueba de los elementos del delito y la conexión del imputado o la imputada. No tan sólo eso, sino que, además, el sistema penal le concede dos (2) amplias oportunidades para lograr tal determinación. Si el resultado de la primera vista preliminar no le resulta favorable, el Ministerio Público cuenta con la vista en alzada, con el gran beneficio estratégico de que esta segunda vista es de novo, lo que le permite presentar prueba nueva. Así, nuestro ordenamiento penal le permite al Ministerio Público aprender de las fallas de la primera vista preliminar y corregirlas a nivel de vista preliminar en alzada para lograr una determinación de causa probable para acusar.

Lo anterior contrasta con la posición de desventaja en la que se encuentra el acusado o la acusada durante esta etapa del procedimiento. Una vez se determina causa probable para acusar, el imputado o la imputada sólo cuenta con una herramienta para evitar ser sometido o sometida al rigor de un juicio plenario: la moción de desestimación. A esto le sumamos que la carga probatoria es sustancialmente mayor a la requerida al Estado. Ello, pues, al mediar una presunción de corrección a favor de la determinación judicial, el o la acusada tiene que probar

que hubo ausencia total de prueba para que proceda la desestimación a su favor.

Ante este escenario, permitirle al Ministerio Público el uso del recurso extraordinario del _certiorari_, tras la desestimación por ausencia total de prueba, es darle aún más oportunidades de posicionarse en ventaja estratégica frente al acusado o a la acusada. Esto, particularmente, dada la desproporción en recursos con los que cuenta el primero en contraposición al segundo. Si el Ministerio Público desaprovechó las ventajas con las que contaba en la vista preliminar y en la vista preliminar en alzada y no presentó _alguna prueba_ de las requeridas, resulta contraproducente que lo beneficiemos con el reconocimiento de una revisión apelativa en la cual, precisamente, se evaluará la prueba presentada por éste.

Según recalcado, una desestimación por ausencia de prueba tiene como premisa que el Estado no demostró tener la prueba suficiente para someter a un ciudadano a la rigurosidad de un proceso judicial penal. Ello, luego de tener la oportunidad de presentar su caso en dos (2) oportunidades distintas con la libertad y ventaja de presentar la prueba que entendiera prudente y necesaria para lograr una determinación de causa probable. El Estado es quien tiene la carga y la responsabilidad de demostrar al tribunal que tiene un caso lo suficientemente sólido para ser llevado a la etapa judicial. Si no cumple con lo anterior, no podemos penalizar al acusado o a la acusada reconociendo una nueva oportunidad para ello a favor del

Estado. Por el contrario, nos corresponde resguardar al ciudadano que ha sido sometido a un proceso penal que el Estado no puede justificar y a quien le cobijan las protecciones constitucionales.

Asimismo, no podemos perder de perspectiva que una desestimación por ausencia total de prueba significa que otro juzgador, independiente al proceso de vista preliminar original y de la vista preliminar en alzada, concluye que procedía una determinación de no causa probable. Por tanto, una desestimación por ausencia total de prueba equivale al mismo desenlace de una determinación de no causa probable. Si la desestimación es referente a una determinación de causa probable en la vista preliminar, el Ministerio Público tiene aún disponible la vista preliminar en alzada, pero si es en contra de una determinación de causa probable dictada en una vista preliminar en alzada, **el Ministerio Público no tiene remedio alguno**, incluidos los remedios apelativos.

En acorde con nuestro ordenamiento procesal penal, las determinaciones de no causa probable para acusar realizadas en las vistas en alzada no son revisables a nivel apelativo. Ello, particularmente, cuando tal determinación va de la mano con la apreciación de la prueba presentada. Aún más, el Ministerio Público está impedido de iniciar un nuevo proceso.[57] Una vez finaliza el trámite a nivel del Tribunal de Primera Instancia con una

---

[57]Véase, <u>Pueblo v. Cátala Morales</u>, supra.

determinación de no causa por ausencia de prueba, la misma es final. Igual suerte debe aplicar a las desestimaciones por ausencia de prueba. Tal interpretación es la más cónsona con el esquema procesal aquí detallado y la más favorable a los derechos de los acusados y las acusadas.

La interpretación de la Mayoría conlleva someter al acusado a otro proceso judicial de evaluación de la prueba, en esta ocasión a nivel apelativo. Asimismo, la Opinión Mayoritaria convierte a este Tribunal en un quinto evaluador de la prueba del Ministerio Público. De este modo, le brinda al Ministerio Público otra oportunidad no contemplada en nuestro ordenamiento jurídico para conseguir una determinación de causa probable. En última instancia, a través de esta Opinión, este Tribunal revoca un dictamen absolutorio y pauta que así también lo puede hacer el Tribunal de Apelaciones.

Como cuestión de derecho, la improcedencia de este curso de acción no es disimilar a la prohibición constitucional a la doble exposición. Esto, pues, el objetivo general de la doble exposición es evitar que el Estado, con todos sus recursos y poderes, abuse de su autoridad y hostigue a un ciudadano con múltiples procedimientos al intentar conseguir su convicción por la comisión de una misma conducta delictiva. Pueblo v. Toro Martínez, 200 DPR 834, 843 (2018). De hecho, en el ámbito apelativo, la protección constitucional contra la doble exposición se activa en los casos en que la revocación del fallo o veredicto de culpabilidad es producto de la

insuficiencia de la prueba admitida en el juicio.[58] Íd. a la pág. 845. De lo contrario, se concedería al Estado una segunda oportunidad para desfilar la prueba que en el primer juicio no presentó y, por lo tanto, permitir el riesgo de que someta nuevamente un caso con prueba suficiente cuando en el primer juicio no lo hizo. Íd., pág. 846. En este caso, de forma similar, el Estado pretende que se realice, a nivel apelativo, un ejercicio de evaluación de la prueba que el tribunal inferior halló insuficiente.[59]

Por otro lado, la Opinión mayoritaria resalta que hemos establecido que un acusado o acusada no puede

---

[58]El Prof. Chiesa Aponte explica lo siguiente:

Hay pues, absolución en los méritos cuando el fallo o veredicto es de no culpable. La protección es de tal naturaleza que excluye quedar sujeto a procedimientos apelativos; de ahí la norma constitucional de que el gobierno- el Estado-no puede apelar un fallo absolutorio no importa cuán erróneo pueda ser, pues el acusado absuelto no puede quedar sujeto a ulteriores procedimientos que envuelvan evaluación de la prueba. Una vez el juzgador evalúa la prueba y la estima insuficiente para una convicción, el ministerio fiscal no puede revisar el fallo absolutorio. E.L. Chiesa Aponte, Procedimiento Criminal y la Constitución: etapa adjudicativa, Puerto Rico, Ed. Situm, 2018, Cap. XIII, pág. 583.

[59]Sabido es que la Constitución de Puerto Rico procura promover el goce cabal de los derechos humanos, y por tal motivo reconoce expresamente en su Sección 19 de la Carta de Derechos que los derechos reconocidos no son restrictivos. Art. II, Sec. 19, Const. PR, Tomo 1. En ese sentido, estos postulados, las normas de hermenéutica y los principios de interpretación judicial que deben regir en el ámbito penal, apuntan también a la improcedencia de lo pautado hoy por este Tribunal.

cuestionar las etapas subsiguientes a la revisión que él o ella comenzó. Tal referencia se hace con el fin de hacer una analogía con la situación de autos. Sin embargo, tal analogía, además de improcedente, es errónea. En tal escenario, el acusado es quien inicia el proceso de revisión a nivel apelativo tras un veredicto de culpabilidad. Aquí, por el contrario, es el Estado quien pretende iniciar un trámite apelativo luego de una desestimación por ausencia de prueba y someter al acusado o acusada a otro proceso de evaluación de prueba. Por consiguiente, lo pautado hoy por una mayoría de este Tribunal es contrario a derecho y en claro menosprecio a los derechos de los acusados y las acusadas.

En esa misma línea, el recurso de certiorari está limitado exclusivamente a revisar si el foro primario cometió un error de derecho. Por ende, ante una determinación de ausencia total de prueba, no podemos pretender en convertir a los jueces de los foros apelativos en nuevos juzgadores de la suficiencia de la prueba a favor del Estado. Tan es así, que, como se puede apreciar de los propios recursos de certiorari presentados por el Estado, éste reconoce implícitamente que su reclamo no era revisable a nivel apelativo. Ello, pues reiteradamente intentó enmarcar la controversia de la determinación de ausencia de prueba como un asunto estrictamente de derecho. De ello se puede concluir razonablemente que el propio Estado está consciente de que no procede una tercera evaluación de la prueba tras una

determinación de ausencia total, pues enfrascó la apreciación y adjudicación de la prueba presentada en la vista preliminar en alzada como subterfugio para su revisión.

Por último, como base para su determinación, la Opinión mayoritaria echa mano al uso y costumbre como parte del arsenal de fundamentos para intentar justificar lo pautado. Sin embargo, tengo que resaltar que en ninguna de la jurisprudencia citada en torno a desestimaciones de acusaciones se planteó directamente la controversia que hoy nos ocupa, sino que versaron sobre otras controversias de derecho. Así, no me parece adecuado y suficiente que hoy se reconozca erróneamente una facultad al Ministerio Público de solicitar una revisión apelativa por el simple y solo hecho de que ello constituyó una práctica en el pasado que no se reconoció explícitamente. El uso y costumbre no puede ir por encima de lo que corresponde conforme a derecho y, más aún, por encima de los derechos de los acusados y las acusadas. Sin embargo, hoy este Tribunal desecha una clara línea jurisprudencial que, aun concediéndole ventajas al Ministerio Público, era mucho más garante de los derechos de las personas expuestas a la celebración de dos (2) vistas preliminares. En contraste, la sustituye por la hoy legislada judicialmente "tercera vista preliminar apelativa de evaluación de prueba". Un tercer turno al bate para el Ministerio Público de evaluación de prueba, totalmente contrario a nuestro ordenamiento jurídico penal.

**IV**

A tenor con todos los fundamentos antes discutidos, no me queda más que distanciarme de la postura acogida por la Mayoría y disentir.


Luis F. Estrella Martínez
Juez Asociado